## George James CHRISOS *v.* Joe EGLESTON

CA 82-129                                    644 S.W.2d 326

Court of Appeals of Arkansas
Opinion delivered January 5, 1983

*Anderson & Anderson* by: *Sam L. Anderson*, for appellant.

*Hobbs, Longinotti & Bosson, P.A.,* by: *Louis J. Longinotti, III,* for appellee.

JAMES R. COOPER, Judge. The appellant, the stepfather of Jason Lewis Chrisos, sought to adopt him without the consent of the appellee, the child's natural father. The appellant relied on Ark. Stat. Ann. § 56-207 (a) (2) (Supp. 1981), which states:

> Consent to adoption is not required of . . . a parent of a child in the custody of another, if the parent for a period of at least one [1] year has failed significantly without justifiable cause (i) to communicate with the child or (ii) to provide for the care and support of the child as required by law or judicial decree. . .

The trial court denied the petition for adoption, finding that the appellant had not proven by clear and convincing evidence that the appellee had failed, without justifiable cause, to communicate with the child and to support him. From that decision, comes this appeal.

The child was born on November 22, 1972. The appellee and Brenda Faye Chrisos, the child's mother, were divorced on February 19, 1974. The Chancery Court of Hot Spring County, Arkansas established visitation rights and set child support at $25.00 per week, payable through the registry of the court. Custody of the child was awarded to Brenda. In 1977, Brenda began living with the appellant, whom she married on March 23, 1981. On March 24, 1981, the appellant filed this lawsuit, seeking to adopt the child. Earlier in 1978, the appellant and Brenda sought the appellee's consent to the adoption of the child, which was refused.

In the case at bar, the appellant alleged that the appellee had failed to communicate with or to support the child for several years. The appellee testified that he attempted to see his child, but that after Brenda and the appellant began living together in 1977, he had increasing difficulty in exercising his visitation rights. The appellee testified that Brenda had threatened to kill him if he attempted to see the child, and that she had left the state several times without informing him of where she and the child were locating. On the other hand, Brenda and the appellant testified that the appellee made little effort to see the child, and that they did not interfere with his visitation rights.

The testimony was also in conflict regarding the payment of child support. Brenda testified that the appellee paid no more than $300.00 to $350.00 during the period of May, 1974, through November, 1978. She further testified that all of the support that she had received in 1979, 1980, and 1981 was actually paid by the appellee's mother. The child support for those years was current. Brenda also testified that the appellee had paid, or caused to be paid, medical bills for the child during 1980.

The appellee testified that he had paid all his child support payments since 1977. He states that although his mother had made some of the payments he had fully reimbursed her. He admitted that there was a period of time prior to 1978 when he was delinquent in paying child support, and that the delinquency was due to Brenda's refusal to allow visitation.

The trial court found that there was a period of at least one year, and in fact almost three years, when there were no child support payments made through the registry of the court. He found that the payments had been resumed and accepted for three years prior to the filing of the petition for adoption. Further, the trial court noted that the testimony was in conflict regarding the child support payments allegedly made directly to Brenda during the alleged period of delinquency. The trial court held that there was no clear and convincing evidence of a failure to significantly support the child for a period of one year.

Regarding the appellee's alleged failure to communicate with the child, the trial court found that the appellee began experiencing substantial difficulties in exercising his visitation rights after 1977. The trial court said that he believed the appellee's testimony that the appellee felt that there was no use in calling Brenda about seeing the child, because those calls invariably ended in a fight. The trial court found that the appellee had a justifiable cause for his failure to communicate with the child. The trial court also noted that pressure had been placed on the child regarding his relationship with his natural father. The trial court found that the appellant had not proven his allegations by clear and convincing evidence, and therefore he denied the adoption, finding that the appellee's consent was required.

In an adoption proceeding, the natural relationship between parent and child is subject to absolute severance. When the adoption is sought without the consent of a parent and against his or her protest, the courts are inclined to favor the maintaining of the natural relationship. *Harper* v. *Caskin,* 265 Ark. 558, 580 S.W.2d 176 (1979). The party seeking to adopt must prove by clear and convincing evidence that the non-consenting parent has failed significantly without justifiable cause either to communicate with or to provide for the care and support of the child for a period of at least one year. *Pender* v. *McKee,* 266 Ark. 18, 582 S.W.2d 929 (1979); *Harper* v. *Caskin, supra.*

In *Harper* v. *Caskin, supra,* the probate court refused to hold that the natural father's consent was unnecessary for the adoption. The Arkansas Supreme Court affirmed the probate court's decision, stating that the appellants failed to sustain their burden of proof when consideration was given to the fact that the failure of the non-consenting parent must be "without justifiable cause". Two factors seemed to influence the Court's decision. One was that from November of 1975 through the filing of the adoption petition in March of 1978, the ex-wife had prevented the natural father from seeing the child. The other was that the natural father suffered from epileptic seizures and had been unable to

obtain employment since his discharge from the armed services.

In the case at bar, there is evidence from which the trial court could find that the appellee had been delinquent in his support payments some four to six years earlier, but that at least three years prior to the filing of the adoption petition, he had paid the arrearages, resumed his payments, and had remained current on his obligation to support his child.

The appellant argues that the trial court erred in crediting the appellee with the payments made by appellee's mother. There is testimony from which the trial court could find that those payments were actually made by the appellee through his mother. The appellee testified that he fully reimbursed his mother for the payments she made.

There is also evidence from which the trial court could find that the appellee had a justifiable cause for his failure to communicate with the child. We note that there is conflicting evidence concerning this issue, and that the trial court is in the best position to determine the credibility of the witnesses.

In the case at bar, the trial court apparently felt that the appellee, even assuming a failure to support the child some four to six years earlier, had paid the arrearages and had resumed payments three years prior to the initiation of these proceedings. The resumption of payments was not, as in *Pender, supra,* as a result of compulsion, or as a result of the filing of the instant proceeding. The appellant seems to argue that a parent can never redeem himself from a failure to pay support, once he has failed to provide support for the requisite period. We need not consider this question, since the trial court found that the appellant failed to prove by clear and convincing evidence that the appellee had failed to support the child for a period of one year without justifiable cause.

In adoption proceedings, we review the record *de novo,* but we will not reverse the probate judge's decision unless it is clearly erroneous or against a preponderance of the

evidence, after giving due regard to his opportunity to determine the credibility of the witnesses. Ark. Stat. Ann. § 62-2016 (g) (Repl. 1971); Arkansas Rules of Civil Procedure, Rule 52 (a), Ark. Stat. Ann. Vol. 3A (Repl. 1979); *Henson* v. *Money*, 273 Ark. 203, 617 S.W.2d 367 (1981).

The trial court held that the appellant had failed to meet his burden of proof, and, therefore, the appellee's consent was required before his child could be adopted by the appellant. We cannot say that that decision is clearly erroneous or against a preponderance of the evidence.

Affirmed.

CORBIN, J., concurs.