Donald Wayne TAYLOR and Betty Joe TAYLOR *v.*
Mark Allen HILL, Bobby Lee HILL and Carlene HILL

CA 82-445                                    661 S.W.2d 412

Court of Appeals of Arkansas
En Banc
Opinion delivered November 30, 1983

*Felver A. Rowell, Jr.,* for appellants.

*Sanford, Pate & Marschewski,* by: *Jon R. Sanford,* for appellees.

GEORGE K. CRACRAFT, Judge. Donald Wayne Taylor and Betty Jo Taylor, great uncle and great aunt of Mark Hill, sought to adopt him without the consent of his natural parents, Mark Allen Hill and Carlene Hill, relying on Ark. Stat. Ann. § 56-207 (Supp. 1981) which provides in pertinent part as follows:

> (a) Consent to adoption is not required of: . . . , (2) a parent of a child in the custody of another, if the parent for a period of at least one year has failed significantly without justifiable cause (i) to communicate with the child or (ii) to provide for the care and support of the child as required by law or judicial decree;

The appellants appeal from the order dismissing their petition for adoption, contending that the court erred in ruling that they had not sustained their burden of proving a statutory ground for dispensing with consent by clear and convincing evidence. We do not agree and affirm the action of the probate judge.

Ark. Stat. Ann. § 56-207 has been the subject of a number of recent opinions of the appellate courts of this state from which the principles governing the issues of this appeal have been established. Statutory provisions involving the adoption of minors are strictly construed and applied. *Roberts* v. *Swim,* 268 Ark. 917, 597 S.W.2d 840 (Ark. App. 1980). The party seeking to adopt a child without the consent of a natural parent bears the heavy burden of proving by clear and convincing evidence that the parents have failed significantly *and* without justifiable cause to communicate with the child or to provide for its care and support for the prescribed period. *Harper* v. *Caskin,* 265 Ark. 558, 580 S.W.2d 176 (1979).

"Clear and convincing evidence" has been defined as evidence of a credible witness whose memory of the facts about which he testified is distinct and whose narration of the details is so clear, direct, weighty, and convincing as to enable the finder of fact to come to a clear conviction, without hesitancy, of the truth of the facts related. This measure of proof lies somewhere between a preponderance

of the evidence and proof beyond a reasonable doubt. It is simply that degree of proof which will produce in the trier of fact a firm conviction as to the allegation sought to be established. *Kelly* v. *Kelly*, 264 Ark. 865, 575 S.W.2d 672 (1979). "Failed significantly" does not mean "failed totally" but the failure must be a significant one as contrasted with an insignificant one. It denotes a failure that is meaningful or important. "Justifiable cause" means that the significant failure must be willful in the sense of being voluntary and intentional; it must appear that the parent acted arbitrarily and without just cause or adequate excuse. *Henson* v. *Money*, 1 Ark. App. 97, 613 S.W.2d 123 (1981) [affirmed on appeal 273 Ark. 203, 617 S.W.2d 367 (1981)]; *Pender* v. *McKee*, 266 Ark. 18, 582 S.W.2d 929 (1979).

While we review probate proceedings *de novo* on the record, it is well settled that the decision of a probate judge will not be disturbed unless clearly erroneous, giving due regard to the opportunity and superior position of the trial judge to judge the credibility of witnesses. ARCP Rule 52 (a); *Chrisos* v. *Egleston*, 7 Ark. App. 82, 644 S.W.2d 326 (1983); *Henson* v. *Money, supra*. Personal observations of the judge are entitled to even more weight in cases involving the welfare of a small child. *Wilson* v. *Wilson*, 228 Ark. 789, 310 S.W.2d 500 (1958).

In 1974 Mark, then sixteen months old, was removed from the custody of his natural parents by a juvenile court. He was placed in the Taylor's home where he has remained since that time. The father testified that during the entire period he had, except on rare occasions, visited with the child at least once a week. He testified that his wife had visited less frequently because she did not feel welcome in the Taylor home. There was evidence in the record of an antagonistic feeling on the part of Mrs. Taylor toward the appellees, particularly toward the natural mother. Both natural parents testified that the visits with the child in the Taylor home were of short duration because of the action and attitude of Mrs. Taylor. They both testified that a short time after their arrival for visitation, she would state that she needed to go to the store, take Mark from the home with her, and would not return until after the natural parents had

tired of waiting and gone home. The father testified, however, that he saw the child on many occasions in places other than appellants' home. Mrs. Taylor admitted that there was visitation with Mark "a few minutes maybe once or twice a month." Both parents testified that they had consulted several attorneys seeking to regain custody of the child.

The appellants do not argue that the parents did not visit with the child but only that the infrequency and short duration of the various visits constituted a significant failure to communicate. If the trial court believed the testimony of the natural father, as he obviously did, he could easily conclude that there was adequate communication between the natural parents and their child, especially in view of the testimony that the duration of the visits was determined by Mrs. Taylor rather than by the appellees.

The court's ruling on failure to support the child presents a more difficult question. Appellants testified that during a seven year period appellees neither contributed anything for the child's support nor purchased food or clothing for him. Appellees admitted that they had furnished little or no cash for his support but had on occasions given him clothing. The natural father testified that they had given him presents on Christmas and other special occasions. While admitting that he had provided little or no support for the child during that period the father testified that he was at all times ready, willing and able to do so but that it would not be received by appellants. He testified that he initially informed Mrs. Taylor, and repeated on several subsequent occasions, that he would provide whatever financial assistance was needed, but she told him that they neither desired nor needed any help from him. He testified that this was a continuing offer which was consistently refused — "everytime I told her she said, 'we don't need anything for him'."

The failure to support the child must be "without justifiable cause" and the heavy burden of proving by clear and convincing evidence that the failure to support was intentional, willful, arbitrary and without justifiable cause

lay upon the appellants. In *Harper* v. *Caskin, supra,* the Supreme Court in declaring the heavy burden cast upon one wishing to adopt a child against the consent of a parent stated:

> "'. . . In order to grant an order or decree of adoption in opposition to the wishes and against the consent of the natural parent, the conditions prescribed by statute which make that consent unnecessary must be clearly proven and the statute construed in support of the right of the natural parent. Natural rights of parents should not be passed over lightly, even though the court is given power to enter decree of adoption without the consent of the parent or guardian when the judge considers that the best interests of the child will be promoted. The law is solicitous toward maintaining the integrity of the natural relation of parent and child, and where the absolute severance of the relation is sought without the consent and against the protest of the parent, the inclination of the courts is in favor of maintaining the natural relation.'"

There were several factors in this record which could have caused the trial judge to remain unconvinced that the natural parents had willfully and arbitrarily failed to discharge their obligation of support. Giving due regard and deference to the superior position of the trial judge to determine the weight of the evidence and the credibility of the testimony we cannot conclude that his ruling that appellants had failed in their burden of proof was clearly erroneous.

Affirmed.