William G. SCHNEIDER, and Janice
Marie Schneider, Petitioners
and Appellees,

v.

S.L.M. and James Geyer, Guardian ad
Litem, Respondents and Appellees,

and

J.R. and the North Dakota Department
of Human Services, Respondents,

and

David Remmen and Sharon Remmen,
Respondents and Appellants.

In the Matter of the ADOPTION OF
M.A.S., a/k/a B.M., a Child.

Civ. No. 10501.

Supreme Court of North Dakota.

March 21, 1984.

Diane Melbye, of Greenwood, Greenwood & Greenwood, Dickinson, for petitioners and appellees.

Eugene F. Buresh, of Freed, Dynes, Reichert & Buresh, Dickinson, for respondent and appellee S.L.M.

James Geyer, guardian ad litem, pro se.

Robert A. Keogh, of Keogh & Boening, Dickinson, for respondents and appellants.

VANDE WALLE, Justice.

David and Sharon Remmen, foster parents of a child designated in previous litigation in this court as "B.M.," appealed from an interlocutory decree of adoption granted to William and Janice Schneider by the district court of Stark County. We affirm.

The circumstances surrounding the birth and care of B.M. have been previously discussed in *In Interest of B.M.*, 335 N.W.2d 321 (N.D.1983). In that decision the Stark County Social Service agency had petitioned the juvenile court for an involuntary termination of parental rights because S.L.M., the unwed, 14-year-old mother of B.M., had placed B.M. for adoption with Janice Schneider, a nurse she met while in the hospital. This court reversed the juvenile court's order to terminate parental rights because the original deprivation, caused by S.L.M.'s unlawful placement of B.M. with the Schneiders, would not continue after the Social Service agency obtained custody of B.M. by an emergency shelter order. B.M. had stayed with the Schneiders for five or six days. She was removed from their care by the Social Service agency and placed with the Remmens, who provided foster care. We remanded the case to permit an orderly disposition of a petition for adoption filed by the Schneiders when the agency had sought an involuntary termination of parental rights. More than five months later, the Remmens filed their petition for adoption. On July 18, 1983, the district court began conducting its hearing to determine if it should grant the Schneiders' petition. It permitted the Remmens to intervene. A hearing on the Remmens' petition for adoption had been scheduled for August 29, 1983, after a home-study evaluation of the Remmens had been completed.

At the hearing on July 18, S.L.M. testified that she would consent to terminating her parental rights in favor of the Schneiders.[1] On July 22, 1983, at the final hearing, the district court stated that it would grant the Schneiders' petition and that it would allow the Remmens to retain custody until July 27, 1983. The court issued an interlocutory decree of adoption on July 27, 1983. The Remmens filed a motion to alter or amend the decree and also sought a stay of execution of the district court's decree. The district court denied the motion but granted a stay of execution for a period of two weeks. The Remmens then sought a stay of execution in this court, which was denied. This appeal followed.

Before proceeding to the merits of the appeal we consider the contention of the guardian ad litem that because the Remmens have appealed from an interlocutory

---

**1.** The district court determined that the consent of the natural father was not required because he had abandoned the child.

decree of adoption and not a final decree of adoption this court should dismiss this appeal.

█ In adoption proceedings the right to appeal is governed by Section 14–15–15, N.D.C.C., of the Revised Uniform Adoption Act, which provides, in part:

"14–15–15. *Appeal and validation of adoption decree.*

"1. An appeal from any final order or decree rendered under this chapter may be taken in the manner and time provided for appeal from a judgment in a civil action."

The Remmens broadly construe the statute by emphasizing the unique nature of adoption proceedings. To interpret Section 14–15–15(1) this court may consider the decisions of States that have also adopted the Uniform Adoption Act.[2] See Section 14–15–21, N.D.C.C.

In *Matter of Appeals From Adoption Orders*, 277 Ark. 520, 642 S.W.2d 573 (1982), the Arkansas Supreme Court in an original proceeding stated that lawyers are justifiably confused in determining when under the Revised Uniform Adoption Act they may appeal an order of adoption. The court recognized that the Revised Uniform Adoption Act permits a court to issue both interlocutory and final decrees of adoption:

"... (1) a final decree may be granted upon the initial application, or (2) a final decree may be granted after a hearing and after six months have lapsed from the date of the interlocutory decree, or (3) the interlocutory decree may become a final decree by its own terms without a final hearing." 277 Ark. at 520–521, 642 S.W.2d at 573.

The court held that a decree of adoption would be appealable, even if it is interlocu-

tory, if no subsequent hearing is required by the terms of the decree.[3]

█ The Revised Uniform Adoption Act provides that "[i]n an interlocutory decree of adoption the court *may* provide for observation, investigation, and further report on the adoptive home during the interlocutory period." [Emphasis supplied.] Rev.Unif.Adoption Act § 13(d), 9 U.L.A. 41. See Section 14–15–13(4), N.D.C.C.; see also Ark.Stat.Ann. § 56–214(d). Under the Act a court thus has discretion in determining if a subsequent hearing is necessary when it issues an interlocutory decree. A court may decide to delay a hearing for the purpose of permitting further investigation or supervision rather than to issue an interlocutory decree that requires a subsequent hearing. Rev.Unif.Adoption Act § 13, Commissioner's Note. Under certain circumstances a court cannot immediately issue a final decree. See Rev.Unif.Adoption Act § 12, 9 U.L.A. 39; Section 14–15–12, N.D.C.C.; Ark.Stat.Ann. § 56–213. When issued, however, "[a]n interlocutory decree of adoption, ... has the same legal effect as a final decree of adoption." Rev.Unif. Adoption Act § 14(c), 9 U.L.A. 45; Section 14–15–14(3), N.D.C.C.; Ark.Stat.Ann. § 56–215(c). An interlocutory decree of adoption that does not require a hearing after its issuance thus resembles a final decree of adoption in many important respects. Under such circumstances a party should not need to wait six months for the interlocutory decree to ripen automatically into a final decree. We therefore find persuasive the Arkansas Supreme Court's interpretation of the right to appeal in adoption proceedings.

█ In the present case the interlocutory decree of adoption does not state that a subsequent hearing is required but does provide that on February 1, 1984, a few

---

**2.** In 1971 the North Dakota Legislature adopted the 1969 Revised Uniform Adoption Act. 1971 N.D.Sess.Laws, Ch. 157, § 1. This Act or the earlier 1953 Uniform Adoption Act has been adopted by Arkansas, Montana, New Mexico, Ohio, and Oklahoma. See 9 U.L.A. 1 (Supp. 1983).

**3.** In *Webb v. Wiley,* 600 P.2d 317 (Okl.1979), the Oklahoma Supreme Court permitted an appeal from an order denying an application to withdraw consent to an adoption and an interlocutory decree of adoption. The court affirmed the trial court's order, but did not discuss the appealability of the interlocutory decree of adoption.

days more than six months after its issuance, the decree was to become final. The Remmens therefore have the right to appeal from the interlocutory decree of adoption.

The Remmens argue that in adoption proceedings this court has de novo review. They contend that standard of review provided by Rule 52(a), N.D.R.Civ.P., that findings of fact shall not be set aside unless clearly erroneous, is not applicable in adoption proceedings.[4] The Schneiders brought their petition for adoption and termination of parental rights pursuant to the Revised Uniform Adoption Act.

In *Pritchett v. Executive Dir. of Soc. Serv. Bd.*, 325 N.W.2d 217 (N.D.1982), this court reviewed de novo a determination of abandonment under the Revised Uniform Adoption Act. We stated that de novo review is the proper scope of review because the result of a determination of abandonment under the Revised Uniform Adoption Act is as severe and permanent as under the Uniform Juvenile Court Act. Because this court reviews de novo termination of parental rights under the Uniform Juvenile Court Act, we adopted the same standard of review for termination of parental rights based upon abandonment under the Revised Uniform Adoption Act.

In the present case this court is not asked to review the termination of S.L.M.'s or the father's parental rights under the Revised Uniform Adoption Act, but rather to review the district court's decision that adoption by the Schneiders is in B.M.'s best interests.

This court has recognized that "[t]here is a vast difference between granting 'custody' in a divorce action and the 'termination of parental rights.'" *Kottsick v. Carlson,*

241 N.W.2d 842 (N.D.1976). In this adoption proceeding, however, the determination of the child's best interests is somewhat analogous to the decision a trial court makes in awarding custody to a parent in a divorce proceeding. In a divorce proceeding the court must choose between two parents; in this case the court considered both the Schneiders and the Remmens as adoptive parents, even though the court's authority was limited to granting or denying the Schneiders' petition. The two proceedings, however, are significantly different in that petitioners in adoption proceedings do not have a fundamental right to care for children.

In *Voth v. Voth*, 305 N.W.2d 656 (N.D.1981), we stated that since 1972 we have applied the standard of review provided by Rule 52(a) when reviewing the trial court's decision that the best interests of a child require awarding custody to a parent. See *Ferguson v. Ferguson*, 202 N.W.2d 760 (N.D.1972). Because the Revised Uniform Adoption Act does not specify a standard of review and because other States that have adopted the Uniform Adoption Act have not approached appellate review in a unified manner,[5] we believe that the standard of review provided by Rule 52(a) supports the principles underlying the Revised Uniform Adoption Act with regard to that portion of the decree that determines adoption is in the best interests of the child.

The Remmens further argue that the findings of fact required by Rule 52(a), N.D.R.Civ.P., are grossly inadequate. They maintain that this court should consider the district judge's statements during the final hearing. The district court had stated that it appeared that bonding had occurred between the Remmens and B.M.

---

**4.** In two earlier adoption cases the parties agreed that Rule 52(a), N.D.R.Civ.P., provided the proper standard of review. See *Mortenson v. Tangedahl*, 317 N.W.2d 107 (N.D.1982); *Matter of Adoption of Gotvaslee*, 312 N.W.2d 308 (N.D.1981).

**5.** In Arkansas the appellate court reviews the record de novo but will not reverse the probate judge's decision unless it is clearly erroneous and against the preponderance of the evidence,

after giving due regard to the judge's opportunity to determine the credibility of the witnesses. See *Chrisos v. Egleston,* 7 Ark.App. 82, 644 S.W.2d 326 (1983). Other States discuss the necessary standard of proof. See, e.g., *Matter of Adoption of V.A.J.,* 660 P.2d 139 (Okl.1983) [finding as to eligibility of child for adoption will not be disturbed on appeal unless it fails to rest on clear and convincing proof].

and that once bonding has occurred experts do not know the degree of stress or trauma a child would experience upon separation from its psychological parents.

■■■ Generally, this court reviews the document labeled "findings of fact." *Schmidt v. Plains Elec., Inc.*, 281 N.W.2d 794 (N.D.1979). If the findings of fact are grossly inadequate, this court will examine a memorandum opinion for the purpose of determining additional facts found by the trial court. *Schmidt v. Plains Elec., Inc., supra.* If there is a discrepancy between the memorandum opinion and the findings of fact, the latter prevails. *Quarles v. McKenzie Public School Dist. No. 34*, 325 N.W.2d 662 (N.D.1982). This court may consider findings appearing in the transcript of an oral recitation from the bench. *Klitzke v. Klitzke*, 308 N.W.2d 385 (N.D. 1981).

■■ Findings of fact are adequate if they provide the reviewing court with a clear understanding of the basis of the trial court's decision. *Tuff v. Tuff*, 333 N.W.2d 421 (N.D.1983); *Clement v. Clement*, 325 N.W.2d 262 (N.D.1982). In the present case the court made 17 detailed findings of fact. The findings indicate that the court, in determining whether or not to grant the Schneiders' petition, considered both the Schneiders and the Remmens as adoptive families. The findings of fact provide detailed information about the Remmens and about the Schneiders. The court also found that delaying the adoption is not in the best interests of B.M.

■■ We believe that these detailed findings of fact are adequate because they provide us with a clear understanding of the basis of the district court's decision. We therefore need not consider the district court's statements during the final hearing. If we were to consider such statements they would not alter our conclusions herein.

Finally, the Remmens argue that the district court erred in determining that the granting of the Schneiders' petition is in B.M.'s best interests. The Remmens, who cared for B.M. from December 8, 1982, to August 10, 1983, argue that the district court failed to recognize that they were B.M.'s psychological parents. They maintain that this court should consider the bonding that occurred between the Remmens and B.M. during that period but not the bonding that subsequently may have occurred between the Schneiders and B.M.

Section 14–15–13, N.D.C.C., provides that the court may issue an interlocutory decree of adoption "[i]f at the conclusion of the hearing the Court determines that ... the adoption is in the best interests of the individual to be adopted, ..." The Revised Uniform Adoption Act does not specify factors a court should consider in determining a child's best interests.

At the hearing various experts testified about the concept of bonding, the central concept in the book *Beyond the Best Interests of the Child.* See J. Goldstein, A. Freud, A. Solnit, *Beyond the Best Interests of the Child* (1973). None of the experts had actually observed the Remmens with B.M. to determine if bonding had occurred. The district court stated in its findings that "[a]ccording to the experts who testified, [B.M.] is reaching a crucial time when she will begin to form attachments to those who care for and nurture her." The court in its oral recitation stated that even though it had read *Beyond the Best Interests of the Child*, the thesis of the book would not control the disposition of the case because the North Dakota Legislature had not adopted statutes similar to the ones discussed in the book. The Remmens argue that the court failed to recognize that as foster parents they are in essence "common-law adoptive parents."

■■■ This court believes that bonding is not necessarily the dispositive factor in determining whether or not to grant an adoption petition. See, e.g., *In re Davis*, — Pa. —, —, 465 A.2d 614, 630 (1983) [in a custody proceeding "psychological bonding, like all other factors, is merely *one* of the elements, albeit an important one, that must enter into the court's determination and, in appropriate cases, can be

outweighed by countervailing factors"]. [Emphasis in original.] A child's best interests is a legal concept and is not to be defined in psychiatric terms. See *Com. ex rel. Grimes v. Yack,* 289 Pa.Super.Ct. 495, 433 A.2d 1363 (1981). In *In Interest of Tremayne Quame Idress R.,* 286 Pa.Super.Ct. 480, 495, 429 A.2d 40, 48, n. 6 (1981), the Superior Court of Pennsylvania articulated the difficulty in defining a child's best interests in psychiatric terms:

"Some authorities, particularly those with a psychoanalytic orientation, take the position that continuity is absolutely critical, particularly in very early childhood. *See, e.g.,* J. Bowlby, *Attachment and Loss,* Vol. I: Attachment (1969), Vol. II: Separation, Anxiety and Anger (1973); J. Goldstein, A. Freud, A. Solnit, *Beyond the Best Interests of the Child,* especially at 31–52 ("On Continuity, a Child's Sense of Time, and the Limits of Both Law and Prediction") (1973). Others dispute this, maintaining that children are developmentally much more resilient. *See, e.g.,* A. and A.C.B. Clarke, *Early Experience: Myth and Evidence* (1976); J. Kagan, R. Kearsley, P. Zelazo, *Infancy: Its Place in Human Development* (1978); M. Rutter, *Maternal Deprivation Reassessed* (1972). *We are not required to settle this scientific dispute. It is enough to say that continuity is an important consideration at every age."* [Emphasis supplied.]

See also J. Wallerstein and J. Kelly, *Surviving the Breakup: How Children and Parents Cope With Divorce* (1980) [authors' viewpoint differs from the thesis of *Beyond the Best Interests of the Child*].

In the present case the district court properly recognized the importance of continuity: It viewed continuity in terms of the goal of finding a permanent home for B.M. When the court announced its decision, S.L.M. still had the right to withdraw her consent to the adoption. By granting the Schneiders' petition the court knew that S.L.M. agreed to the adoption. The director of Stark County Social Services testified that, in his opinion, B.M. should be placed with a licensed placement agency, which might decide to award custody of B.M. to a third party. Presumably such a procedure would further delay a permanent placement of the child.

The findings of fact also reveal that the Schneiders are able to provide a suitable home for B.M. The Schneiders are well established in their community and are economically stable. The guardian ad litem also testified that it is in B.M.'s best interests to grant the Schneiders' petition. We believe that the district court did not err in determining that granting the Schneiders' petition was in B.M.'s best interests.

Although we recognize the disappointment that the Remmens feel, we believe that "[t]he main purpose of adoption is to find homes for children, not children for families." See *In re Harshey,* 45 Ohio App.2d 97, 97, 341 N.E.2d 616, 617, Syllabus ¶ 1 (1975).

The interlocutory decree of adoption is affirmed.

ERICKSTAD, C.J., and PEDERSON, GIERKE and SAND, JJ., concur.