Ralph T. BEMIS and Debra Hare BEMIS *v.* Freddie M. HARE

CA 86-197 718 S.W.2d 481

Court of Appeals of Arkansas
En Banc
Opinion delivered November 5, 1986

*Walls Law Firm, P.A.*, by: *Charles A. Walls, Jr.* and *J. Michael Stuart*, for appellants.

*Hale, Ward, Young, Green & Morley*, by: *Milas H. Hale*, for appellee.

DONALD L. CORBIN, Judge. Appellants, Ralph T. Bemis and Debra Hare Bemis, appeal a ruling by the Probate Court of Lonoke County denying their petition for adoption of a child, David Paul Hare, age 12, who was born during the marriage of appellant Debra Hare Bemis to appellee, Freddie M. Hare. We reverse and remand.

The evidence was undisputed that from October 1983, to the time of trial no support was paid by appellee, the natural father. Appellee, who is in the Air Force, testified that he voluntarily chose not to pay the child support and discontinued his military dependent allotment. It was also undisputed that appellee did not visit nor communicate with the child in any manner from October of 1983 to the time of the hearing in February of 1986. However, the trial court ruled that appellee had justifiable cause not to do so, and denied appellants' petition for adoption.

Appellants argue on appeal that (1) the court erred in holding appellee's consent to the adoption was required; (2) the court erred in finding that it would be in the best interest of the child to deny the petition; (3) the court erred in allowing testimony of inadmissible settlement negotiations; and, (4) the

court abused its discretion in questioning the child over appellants' objection.

 Ark. Stat. Ann. § 56-206 (Supp. 1985) provides that the natural parents must generally consent to an adoption for it to be valid. Exceptions are set forth in § 56-207(a)(2) (Supp. 1985) which provides as follows:

> (a) Consent to adoption is not required of: (2) a parent of a child in the custody of another, if the parent for a period of at least one [1] year has failed significantly without justifiable cause (i) to communicate with the child or (ii) to provide for the care and support of the child as required by law or judicial decree;

 It is well settled that statutory provisions involving the adoption of minors are strictly construed and applied. *Roberts* v. *Swim*, 268 Ark. 917, 597 S.W.2d 840 (Ark. App. 1980). The holding of the supreme court in *Harper* v. *Caskin*, 265 Ark. 558, 580 S.W.2d 176 (1979), places a heavy burden upon the party seeking to adopt a child without the consent of a natural parent of proving by clear and convincing evidence that the parent has failed significantly or without justifiable cause to communicate with the child or to provide for the care and support of the child as required by law or judicial decree. Clear and convincing evidence has been defined as being:

> Evidence by a credible witness whose memory of the facts about which he testifies is distinct and whose narration of the details thereof is exact and in due order and whose testimony is so clear, direct, weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the facts related is clear and convincing. . . . This measure of proof lies somewhere between a preponderance of the evidence and proof beyond a reasonable doubt. . . . It is simply that degree of proof which will produce in the trier of fact a firm conviction as to the allegation sought to be established.

*Kelly* v. *Kelly*, 264 Ark. 865, 870, 575 S.W.2d 672, 675-676 (1979) (citations omitted). "Failed significantly" does not mean "failed totally" but the failure must be a significant one as contrasted with an insignificant one. It denotes a failure that is

meaningful or important. "Justifiable cause" means that the significant failure must be willful in the sense of being voluntary and intentional; it must appear that the parent acted arbitrarily and without just cause or adequate excuse. *Henson* v. *Money*, 1 Ark. App. 97, 613 S.W.2d 123, *aff'd*, 273 Ark. 203, 617 S.W.2d 367 (1981).

In *Watkins* v. *Dudgeon*, 270 Ark. 516, 606 S.W.2d 78 (Ark. App. 1980), the court of appeals reversed the dismissal of the appellants' petition for adoption. In holding the natural father's consent was not required under the circumstances, we stated:

> The obvious purpose of the applicable statute [Ark. Stat. Ann. § 56-207] is to provide a child with a real father instead of one who, by his conduct, has proven to be a father by blood only. Although the legislature cannot force a man to be a father within the proper meaning of that term, it can and has afforded a judicial method whereby a child may have an opportunity to experience the benefits of having a real father by adoption. Our statute permits the courts, where the proper circumstances present themselves, to grant a petition for adoption to petitioners who demonstrate true love, affection and care for a child, regardless of the arbitrary dissent by a natural father.

*Id.* at 521, 606 S.W.2d at 81 (citations omitted).

While we review probate proceedings *de novo* on the record, it is well settled that the decision of the probate judge will not be disturbed unless clearly erroneous (clearly against the preponderance of the evidence), giving due regard to the opportunity and superior position of the trial judge to judge the credibility of the witnesses. ARCP Rule 52(a); *Henson* v. *Money, supra.*

Custody of David had been awarded to appellant Debra Bemis and appellee was ordered by the divorce decree dated June 1, 1976, to pay $100 per month for David's support. Appellant Debra Bemis and appellee were subsequently involved in litigation over David in reference to child support arrearages and problems with visitation. Appellee was ordered to increase his child support payments to $150 per month and the arrearages were reduced to judgments against him. Argument of counsel for

appellants reflects that the judgments for arrearages totalling in excess of $10,000 were unsatisfied at the time of the hearing in February of 1986.

Appellee testified that he wanted to support his child and that he would like to see him on a regular basis. He acknowledged his love for his son and indicated that he was willing to place the support on his military allotment again. During cross-examination, appellee admitted that he had made no effort to see his son since October of 1983; that he missed scheduled visitation with his son and could not remember if he had notified appellant Debra Bemis that he would not be exercising his visitation; and that he had not given his son a Christmas present since 1982 nor had he called David or done anything for David on his birthdays as of 1982. Appellee acknowledged that his son seemed to receive good care from appellants and that he was a child to be proud of. Appellee was questioned by the court in regard to his voluntary suspension of allotment payments and stated that he took that action because it was getting harder to get David. Appellee testified that each time he went to appellants' home to pick up David, appellant Debra Bemis had David ready to go and his suitcase packed. Appellee stated that on one occasion he had to physically pick David up, who was screaming and kicking, and put David in the truck. Appellee noted that a lot of times David would run from appellee while still in the house. However, appellee unequivocally testified that appellant Debra Bemis never physically prevented his exercise of visitation with David.

Appellant Debra Bemis testified that David was two years of age at the time of her divorce from appellee. She married appellant Ralph Bemis on June 16, 1976. She stated that appellee had not made regular visits with David since 1981. She would have David ready each time and on many occasions appellee would not show up. Appellant Debra Bemis acknowledged that there had never been any birthday or Christmas cards or Christmas presents sent to David by appellee. She described the relationship between her husband and David as that of a father and son. They did a lot of things together and were very happy.

Appellant Ralph Bemis testified that he had lived with David since he was two years of age and had enjoyed the relationship of father and son with him since that time. He was a

Boy Scout leader of David's troop and enjoyed hunting, fishing and other sports with David. Appellants had two daughters, aged three and six, in their home. He stated he was financially able to support David.

Appellee's mother testified that she loved her grandson and wanted to visit him. She stated that she and her husband had filed petitions seeking visitation rights with David several times. Mrs. Hare testified that she was unsuccessful in exercising those visitation rights. She described the events which took place in appellants' home during times she attempted to exercise her visitation with David. She stated there was always a "scene". She would ask for David and appellant Debra Bemis would tell Mrs. Hare that David was in the house. Mrs. Hare would ask David and David would refuse to go with her. She and her husband had not visited with David since 1983.

The probate judge made specific findings in his order denying appellants' petition for adoption and the following are his findings which are pertinent to the issue of appellee's failure to support or communicate with David in excess of one year:

. . . .

(5) The respondent, Freddie Max Hare, has not visited with the child nor paid support for over one year, however, the Court believes in this case the action was justified within the meaning of A.S.A. 56-207.

(6) From the Court's view of the witnesses, it is believed that Debra S. Bemis did everything possible to avoid collecting support from the natural father, Mr. Hare, in order to effect an adoption. That Mr. Hare was led to believe that he should not pay support since he was unable to have visitation with the child, without greatly upsetting him. The Court accepts Mr. Hare's testimony in this regard.

. . . .

Upon our *de novo* review of the record, we must conclude the probate judge's finding that appellee's failure to

support David was justified is clearly erroneous. In *Henson v. Money, supra,* the Arkansas Supreme Court, in granting the adoption over the objection of the father, stated that "[t]he duty to pay child support is independent of the duty of the custodial parent to allow visitation, as both may be enforced by the courts." *Id.* at 207. In *Green v. Green,* 232 Ark. 868, 341 S.W.2d 41 (1960), the supreme court recognized that the father's duty to support his minor child cannot be excused on the basis of the conduct of others, unless that conduct prevents him from performing his duty. *See also Pender v. McKee,* 266 Ark. 18, 582 S.W.2d 929 (1979); *Brown v. Johnson,* 10 Ark. App. 110, 661 S.W.2d 443 (1983). The probate judge undoubtedly overlooked the above principles of law in determining appellee had justifiable cause to not support David. There was no competent evidence to show that appellants' conduct precluded appellee from making his support payments. There was no evidence that appellee was financially unable to meet his obligation and the record clearly reflects that appellee voluntarily chose not to pay the support. The probate judge concluded in his findings that appellant Debra Bemis "did everything possible to avoid collecting support . . . in order to effect an adoption." Her testimony, as well as the testimony of all the witnesses, does not support this conclusion. She testified that she had been to court approximately twelve times since her divorce from appellee. Her reasons for not having pursued any recourse against appellee for child support since March of 1984 were as follows: (1) she did not feel one should have to make a father support his child; (2) if the father did not want to do it, you can't make him do it; (3) it was not worth staying in court and going through the expense; and (4) any man who loved his child would not have to be made to pay child support.

Under the circumstances of this case, it simply made no difference if appellee believed appellants interfered with his ability to observe visitation with David or not. Appellee has a duty and obligation to support David whether ordered to do so by a court or not. *See Pender v. McKee, supra.* The probate judge also determined that appellee was led to believe by appellants that he did not have to pay support since he was unable to have visitation with David and the court accepted appellee's testimony in that regard. The evidence in this case clearly illustrates that beginning

with the time of the divorce on June 1, 1976, appellee unjustifiably failed to meet his support obligations to his child. Appellee contends his failure to support David in the three-year period preceding the hearing on the adoption petition was justifiable because of an agreement he alleges he and appellant Debra Bemis entered into excusing his obligation to pay child support. This also did not relieve appellee of his duty and obligation to support David.

In *Dangelo v. Neil*, 10 Ark. App. 119, 661 S.W.2d 448 (1983), we affirmed the probate judge's ruling that the consent of the natural mother was not required for the adoption of her son by the appellees. The natural mother had had no communication and had made no significant contribution toward the care and support of her son in excess of one year. There was evidence the appellees gave the natural mother cause to believe no contribution was expected from her. We stated, however, "Whether appellees expected or requested contributions from appellant is not the determining factor. A parent has the obligation to support a minor child, and no request is necessary. Ark. Stat. Ann. § 57-633 (Repl. 1971)." *Id.* at 122, 661 S.W.2d at 450.

Appellee's action in failing to pay support was an arbitrary act without just cause or adequate excuse. We find that appellants proved by clear and convincing evidence that appellee failed significantly and without justifiable cause to provide for the care and support of David. Appellee's consent to the adoption was therefore not required.

A closer question is presented by the issue of whether appellee failed significantly without justifiable cause to communicate with David for a period of more than one year. In view of our holding on the issue of appellee's failure to significantly and without justifiable cause support David, we need not decide this question nor the other arguments which appellants have raised in their appeal.

A probate court may grant a petition for adoption if it determines at the conclusion of a hearing that the required consents have been obtained or excused and that the adoption is in the best interest of the child or individual to be adopted. Ark. Stat. Ann. § 56-214(c) (Supp. 1985); *Dixon v. Dixon*, 286 Ark. 128, 689 S.W.2d 556 (1985); *Falbo v. Howard*, 271 Ark. 100, 607

S.W.2d 369 (1980). In the case at bar the order of the probate judge denying appellants' petition for adoption does not address the issue of whether it is in the best interest of David to be adopted. It is only logical for this court to assume that the probate judge did not consider this question in view of his determination that appellee's consent was necessary. We stated in *McKee* v. *Bates*, 10 Ark. App. 51, 661 S.W.2d 415 (1983), that if the trial court determines a parent's consent is unnecessary, such a finding does not require that the adoption be granted. Before an adoption petition may be granted, the probate judge must find that the adoption is in the best interest of the child. *See also Shemley* v. *Montezuma*, 12 Ark. App. 337, 676 S.W.2d 759 (1984). Accordingly, this cause is reversed and remanded with directions to the probate court to conduct a hearing for the limited purpose of determining whether it is in the child's best interest to grant the adoption.

Reversed and remanded.

CRACRAFT, C.J., CLONINGER, J., WRIGHT, Special Judge, join in the majority.

COOPER and MAYFIELD, JJ., dissent.

MELVIN MAYFIELD, Judge, dissenting. I do not agree that the trial judge's decision in this case should be reversed. The rules by which we review the trial judge's decision were clearly set out in our case of *Taylor* v. *Hill*, 10 Ark. App. 45, 661 S.W.2d 412 (1983) as follows:

> Ark. Stat. Ann. § 56-207 has been the subject of a number of recent opinions of the appellate courts of this state from which the principles governing the issues of this appeal have been established. Statutory provisions involving the adoption of minors are strictly construed and applied. *Roberts* v. *Swim*, 268 Ark. 917, 597 S.W.2d 840 (Ark. App. 1980). The party seeking to adopt a child without the consent of a natural parent bears the heavy burden of proving by clear and convincing evidence that the parents have failed significantly *and* without justifiable cause to communicate with the child or to provide for its care and support for the prescribed period. *Harper* v. *Caskin*, 265 Ark. 558, 580 S.W.2d 176 (1979).

"Clear and convincing evidence" has been defined as evidence of a credible witness whose memory of the facts about which he testified is distinct and whose narration of the details is so clear, direct, weighty, and convincing as to enable the finder of fact to come to a clear conviction, without hesitancy, of the truth of the facts related. This measure of proof lies somewhere between a preponderance of the evidence and proof beyond a reasonable doubt. It is simply that degree of proof which will produce in the trier of fact a firm conviction as to the allegation sought to be established. *Kelly* v. *Kelly*, 264 Ark. 865, 575 S.W.2d 672 (1979). "Failed significantly" does not mean "failed totally" but the failure must be a significant one as contrasted with an insignificant one. It denotes a failure that is meaningful or important. "Justifiable cause" means that the significant failure must be willful in the sense of being voluntary and intentional; it must appear that the parent acted arbitrarily and without just cause or adequate excuse. *Henson* v. *Money*, 1 Ark. App. 97, 613 S.W.2d 123 (1981) [affirmed on appeal 273 Ark. 203, 617 S.W.2d 367 (1981)]; *Pender* v. *McKee*, 266 Ark. 18, 582 S.W.2d 929 (1979).

While we review probate proceedings *de novo* on the record, it is well settled that the decision of a probate judge will not be disturbed unless clearly erroneous, giving due regard to the opportunity and superior position of the trial judge to judge the credibility of witnesses. ARCP Rule 52(a); *Chrisos* v. *Egleston*, 7 Ark. App. 82, 644 S.W.2d 326 (1983); *Henson* v. *Money, supra.* Personal observations of the judge are entitled to even more weight in cases involving the welfare of a small child. *Wilson* v. *Wilson*, 228 Ark. 789, 310 S.W.2d 500 (1958).

The record contains evidence showing that the appellant, Debra Bemis, was first married to the appellee, Freddie Hare. They are the parents of a son born on March 17, 1974. At that time, Debra was 17 years old and Freddie was 18. They were divorced on June 1, 1976, and Debra was married to the appellant, Ralph Bemis, on June 16, 1976. Both Freddie and Ralph were in the Air Force and stationed in Pulaski County at

the time of both events. Freddie testified that he paid child support until late in 1983, but admits he stopped his allotment for that purpose at that time. At the hearing in February of 1986, he admitted he had not made any support payments nor seen his son for more than two years. In response to questions by the court, he testified as follows:

I stopped my allotment payments because it was getting harder and harder to get David. Everytime I would go over there she'd have him ready. She would have his suitcase but he wouldn't be ready to go. One time I had to pick him up just kicking and screaming and put him in the truck and take him with us. A lot of times he would run in the house and I wouldn't get him out. I wouldn't want to go in there after him. It would just seem like it wasn't going anywhere. She had made this offer several times to me. The same offer that is on that paper.

THE COURT: What paper?

A. On the—the letter there that Mr. Craig sent me.

THE COURT: Well, tell me what the offer was.

A. She said if I quit seeing my son that I wouldn't have to pay child support.

THE COURT: When did that start?

A. Several years ago. Almost from the first.

THE COURT: What was yours and her relationship on these times when you were attempting to exchange the child?

A. Mine and hers?

THE COURT: Yeah.

A. They were peaceful enough, I guess. I didn't have—it wasn't her that gave me the trouble. Not directly.

We talked, and everything was fine until I got ready to leave and take David. And that's when all the trouble would start. She didn't every—you know—physically try to stop me, but she never—you know—mentally try to get him ready to go either.

Appellants' abstract, pages 24-25.

In addition to the above evidence, there was evidence from Freddie's mother that she was not allowed to see her grandson. She even obtained a court order allowing visitation rights but said she was not able to successfully exercise that right because there was usually a scene. When she went to the house to get him, Debra would say, "He is in there" and David would say, "I am not going." She stopped trying to visit him in 1983.

The court heard all the evidence, talked to the boy, then 12 years old, in chambers, and then stated in open court:

I am going to take this case under advisement. I am going to make this one statement, basically, in Court today. I have never seen a child that I thought was more coaxed and prepped on what to say. It is very upsetting, in my opinion, to see what has occurred with that child and how he has been turned against his father. And that's all I'm going to say right now.

In his order, the judge made the following pertinent findings:

(5) The respondent, Freddie Max Hare, has not visited with the child nor paid support for over one year, however, the Court believes in this case the action was justified within the meaning of A.S.A. 56-207.

(6) From the Court's view of the witnesses, it is believed that Debra S. Bemis did everything possible to avoid collecting support from the natural father, Mr. Hare, in order to effect an adoption. That Mr. Hare was led to believe that he should not pay support since he was unable to have visitation with the child, without greatly upsetting him. The Court accepts Mr. Hare's testimony in this regard.

(7) That the Court's examination of the twelve year old child, David Paul Hare, was most important. The Court believes that Debra Bemis has done everything possible, (although she may not recognize this) to turn the child from his father. That the child was taught to hate his father, although he was unable to explain that dislike. Although not within this Court's jurisdiction, the Court is certain that because of the child's unjustified attitude towards the father, visitation will be almost impossible for a number of years. This will be particularly so, if the mother continues to control the child's thought relating to his father.

(8) The Court accepts the testimony of the father that it was impossible to visit the child without greatly upsetting him.

(9) That the petition for adoption should be and is hereby denied.

Considering that, under *Taylor* v. *Hill, supra*, one seeking to adopt a child without the consent of a natural parent bears "the heavy burden of proving by clear and convincing evidence" that the natural parent has failed significantly *and* without justifiable cause to communicate with the child or to provide for its care and support for the prescribed period; that in order for the failure to support or communicate to be significant, it must appear that the parent acted arbitrarily "and without just cause or adequate excuse"; and that we are not to disturb the decision of the trial judge unless it is clearly erroneous, giving due regard to his superior position to judge the credibility of the witnesses, it is clear to me that we should affirm the trial judge's decision in this case.

The majority opinion lays great stress upon the fact that the appellee has not paid the child support ordered by the court. However, as the statute provides, the right to adopt without consent of a natural parent is allowed only where the failure is without justifiable cause—or as the case law provides, without "just cause or adequate excuse." Here, the appellee's excuse, accepted by the court, was the problem of visitation. While both

appellee and his mother concede that the boy's mother did not refuse visitation rights, there is clear evidence by the boy's father and grandmother that the boy's mother made no attempt to have the boy *mentally* ready for their visitation. Thus, the father stopped making the support payments.

An exhibit, abstracted by appellants, shows that the failure to allow visitation was raised on eight different occasions by motions filed in the trial court. The judge specifically noted that the mother had made no real effort to collect the support payments. She even testified that it was not worth staying in court to try to enforce support payments and that "you should not have to make a father support his child." The real reason for this attitude, I submit, is that the stepfather, who was in the same military unit with the boy's father and who married the boy's mother 15 days after the father and mother were divorced, is able, as he testified, to support the boy and, therefore, they have been content to forget the father's support if he would stop visiting the boy. In fact, there is evidence to the effect that such an agreement was made between the parties. None of this forgives the debt that is owed for past support, but it does, in my view, support the trial court's decision to deny the petition for adoption.

I am authorized to state that Judge Cooper joins in this dissent.