Pete BROWN III *v.* Lola M. JOHNSON

CA 83-4                                661 S.W.2d 443

Court of Appeals of Arkansas
En Banc
Opinion delivered December 7, 1983

*Gibson & Bearden,* by: *Michael R. Bearden* and *Stephen P. Hale,* for appellant.

*Holland & Todd,* by: *Michael E. Todd,* for appellee.

JAMES R. COOPER, Judge. The appellee, the maternal grandmother of Kevin Rea'l Brown, sought to adopt her grandson without the consent of the appellant, the child's natural father. The probate judge granted the petition for adoption, finding that the appellant's consent was unnecessary under Ark. Stat. Ann. § 56-207 (Supp. 1983). From that decision comes this appeal.

The appellant, Pete Brown III, was married to Lilly Brenda Brown on September 19, 1970. One child was born of this marriage on December 20, 1975. Less than one year after the birth of their child, Mrs. Brown filed for divorce. The appellant, who was working in Alaska, did not file an answer or otherwise contest the divorce. On December 14, 1976, a divorce decree was entered which awarded the appellant's ex-wife legal custody of the couple's minor child, Kevin Rea'l Brown, with reasonable visitation rights granted to the appellant.

On January 14, 1977, the appellee and her husband filed a petition for adoption of the child. The appellant intervened, contesting the adoption and the petition was subsequently dismissed.

Later that year, in December, 1977, the chancellor modified the original divorce decree to award physical custody of the child to the appellee and her husband, who were the parents of the child's natural mother. During this proceeding, the appellant agreed to make child support

payments of $100.00 per month through the registry of the court. The chancellor also established definite visitation rights for the appellant, awarding him temporary custody of the child for thirty days in June of every year and one week during the Christmas holidays every other year beginning in 1978.

On June 1, 1978, the appellant filed a petition against the natural mother, the appellee and the appellee's husband for contempt of court. The appellant alleged that these persons had failed to comply with the court's order because they had prevented the appellant from exercising his visitation rights. The following day, June 2, 1978, the chancellor entered an order allowing the appellant to visit with his son for thirty days beginning on June 15, 1978. As a result, the contempt petition was dismissed by the mutual agreement of the parties.

On November 3, 1980, the appellee filed a second petition for adoption. The natural mother had already consented to the adoption and waived notice of all proceedings or hearings. The motion to dismiss, which stated that the appellee had failed to comply with the Uniform Adoption Statutes, was never acted upon.

On July 6, 1981, the appellant again filed a motion for contempt of court against the appellee for her failure to allow the appellant to have his child for the thirty day visitation period in June, 1981. The appellee responded by denying the charges and additionally filing a separate petition to have the divorce decree modified to reflect that the appellant was not the natural father of the minor child. In seeking a modification, the appellee additionally requested that the appellant be ordered to take a physical exam to determine paternity. A settlement was arranged between the parties and the actions were dismissed. The contempt action was dismissed on the condition that the appellant be allowed to visit his child, outside of the presence of the appellee, during the Labor Day weekend.

On November 19, 1981, the appellee filed an amended petition for adoption, which stated that the consent of the

appellant was not required because the appellant failed significantly, without justifiable cause, to not only communicate with the child, but to provide child support for a period of one year. In his answer to the amended petition, the appellant affirmatively stated his consent was required because he had justifiable cause in not seeing or supporting his child. The appellant argued that he had been prevented from exercising his rights and providing support because of actions by the appellee.

On August 23, 1982, a hearing was held on the adoption petition. After hearing the evidence, the probate judge found the appellant's consent was not required under Ark. Stat. Ann. § 56-207 (Supp. 1983). The probate judge granted the adoption.

The appellant argues that the probate judge erred in finding that the appellant had failed significantly, without justifiable cause, to both communicate with his minor son and to provide child support for his son from February 12, 1979 through December 31, 1980. We disagree.

Generally, in order for a valid adoption to be granted, the natural parents of the child must consent. *See* Ark. Stat. Ann. § 56-201 (Supp. 1983). However, there are certain statutory exceptions to this general rule. Arkansas Statutes Annotated § 56-207 (a) (2) (Supp. 1983) provides:

> Consent to adoption is not required of a parent of a child in the custody of another, if the parent for a period of at least one [1] year has failed significantly without justifiable cause (i) to communicate with the child or (ii) to provide for the care and support of the child as required by law or judicial decree;

Although this revised act has eliminated many of the more stringent requirements for adoption without consent, the statute is still to be strictly construed and applied. *Roberts* v. *Swim,* 268 Ark. 917, 597 S.W.2d 840 (1980). *See also Henson* v. *Money,* 273 Ark. 203, 617 S.W.2d 367 (1981).

To avail herself of the provision (a) (2) of Ark. Stat. Ann. § 56-207 (Supp. 1983), the appellee was required to establish

all of the above mentioned factors by clear and convincing evidence. In *Watkins* v. *Dudgeon,* 270 Ark. 516, 606 S.W.2d 78 (Ark. App. 1980), this Court stated:

> Like the court below, we recognize the heavy burden which the law places upon one wishing to adopt a child against the consent of a parent. *Roberts* v. *Swim, supra.* We also recognize that other things being equal the law favors natural parents over others in custody cases. However, the rights of parents are not proprietary and are subject to their correlated duty to care for and protect the child; and the law secures the preferential rights of parents only so long as they discharge their obligations. Parental rights are not to be enforced to the detriment or destruction of the happiness and well being of the child. [Citation omitted.]

*See also Loveless* v. *May,* 278 Ark. 127, 644 S.W.2d 261 (1983); *Woodson* v. *Lee,* 221 Ark. 517, 254 S.W.2d 326 (1953).

In the case at bar, the appellant argues that his failure to communicate with his son and pay child support was justified because of the appellee's actions. The appellant testified that in December, 1978, he came to Arkansas to visit his son at Christmas. After being unable to locate his son and the appellee, the appellant spoke with his ex-wife and his ex-wife's boyfriend, Charles Elliot. Mr. Elliot told the appellant that the appellee had moved and he thought that she was in Missouri visiting relatives. In September, 1979, the appellant again came to Arkansas to try and find his son and the appellee, but he was unsuccessful in locating them.

The appellant argues that his failure to pay child support payments between February, 1979 and December, 1980 was due to the fact that he was unable to locate the appellee. The appellant testified that he had received one letter back from the Post Office because it was not the correct address, but had not brought the returned letter with him to court. The address on the letter was the one the clerk's office had on its records. The appellant testified that he did not begin payments again until after the second adoption

petition was filed because it was only then that he knew where his son and the appellee were living. All of the payments received after the filing of the adoption petition were refused by the appellee, although the appellee has allowed the appellant to see his son.

The appellant also testified that during 1979 and 1980 he encountered financial difficulties. Although the evidence indicated that he was employed for the majority of this period, the appellant testified that in the construction business, work is not always steady. As a result, the appellant argued that he could not come back to Arkansas from Arizona or Alaska as often as he preferred from 1979 through 1981.

The appellee testified that after her husband died in August, 1978, she moved from Manila to Blytheville. Although she moved in October, 1978, she was not in her new home until November, 1978, because she took a trip to Chicago for a few weeks. In May, 1979, the appellee moved to Walnut Ridge and has remained at that address since that time. The appellee admitted that she did not tell the appellant where she was moving, but claimed that she failed to do so because she did not know the appellant's whereabouts. The appellee testified that the court always knew where she lived and that her mail was forwarded from her old address each time she moved. The court clerk's records show that a change of address to Walnut Ridge was not made until December 23, 1980. The appellant's ex-wife testified that the appellant knew where she was living and could have contacted her concerning where their son and the appellee were living but failed to do so.

In adoption proceedings, this Court reviews the record *de novo*, but we will not reverse the probate judge's decision unless it is clearly erroneous or against a preponderance of the evidence, after giving due regard to his opportunity to determine the credibility of the witnesses. *Henson* v. *Money, supra. See also Loveless* v. *May, supra.* After reviewing the evidence as required, we cannot find that the probate judge's decision was clearly erroneous. Even assuming, *arguendo,* that we were to determine that the appellant had justifiable

excuse for not communicating with his son, we could not make the same finding concerning the appellant's failure to pay child support. In *Henson* v. *Money, supra,* the Arkansas Supreme Court, in granting the adoption over the objection of the father, stated that "[t]he duty to pay child support is independent of the duty of the custodial parent to allow visitation, as both may be enforced by the courts." In the case at bar, the appellant had previously agreed, when physical custody was given to the appellee, to support his son by payments to be made through the registry of the court. The court clerk's records indicate that no payments were received from February 1979 through December, 1980. Additionally, it appears from the record that the only time the appellant demonstrated any interest in his son was when adoption petitions were filed by the appellee. In *Pender* v. *McKee,* 266 Ark. 18, 582 S.W.2d 929 (1979), the Arkansas Supreme Court, noting that the majority of the contributions made by the father appeared to have been made because of some form of compulsion or because of the pendency of the adoption proceeding, stated:

> The parent must furnish the support and maintenance himself and the duty is a personal one, and he may not rely upon assurance that someone else is properly supporting and maintaining the child to avoid the impact of the statute's providing for adoption of his child without his consent because of his failure to support the child. . . . The father's duty to support his minor child cannot be excused on the basis of the conduct of others, unless that conduct prevents him from performing his duty.

Since we do not find justifiable cause for the appellant's failure to meet his obligations to his son by making payments through the registry of the court, we affirm the probate judge's decision to grant the appellee's petition for adoption.

Affirmed.

GLAZE, J., dissents.

TOM GLAZE, Judge, dissenting. I dissent. The facts and holding in this case merely reemphasize what I had to say in my dissent in *Dodson* v. *Donaldson*, 10 Ark. App. 64, 661 S.W.2d 425 (1983). As in *Dodson*, this adoption proceeding emanates from a divorce action, but the instant case differs in that it involves a dispute between the maternal grandmother and the child's father instead of a direct confrontation between ex-spouses. In Affirming the trial court's decision, I quickly note the majority relies on *Henson* v. *Money*, 273 Ark. 203, 617 S.W.2d 367 (1981), and *Pender* v. *McKee*, 266 Ark. 18, 582 S.W.2d 929 (1979), but fails to mention *Harper* v. *Caskin*, 265 Ark. 558, 580 S.W.2d 176 (1979). In my dissent in *Dodson* v. *Donaldson, supra*, I dealt with the significance of choosing between these cases when arguing adoption cases. Thus, I will not belabor that point again.

The facts in this case depict better than I ever could the reason why Ark. Stat. Ann. § 56-207 (a) (2) of our 1977 Adoption Act should be at least modified — if not repealed — by our General Assembly. Instead of warring parents, we have an added ingredient to this adoption proceeding — a warring grandmother (the appellee) pitted against a former son-in-law (the appellant).

The appellant had no sooner divorced his wife (December 14, 1976) than appellee filed her first petition for adoption (January 14, 1977). Appellant was residing and working in Alaska when the divorce decree was entered and the adoption petition was filed; nevertheless, he promptly filed his objection to any adoption of his child, and the appellee voluntarily dismissed her adoption action. After the divorce and adoption proceedings, appellant's relationship with the appellee and his former wife continued to deteriorate. In fact, appellant had to return to Arkansas on two separate occasions to file contempt petitions against appellee to enforce his court-ordered visitation privileges. His second contempt petition was filed on June 1, 1978, and it resulted in his seeing his son for the last time. Interestingly enough, the appellee, during this particular dispute between the parties, charged that appellant was not the child's father. Furthermore, she requested the court to order that appellant be subjected to tests to determine paternity.

Appellee subsequently withdrew her request, and appellant was given visitation with his son; but afterwards, appellee began to move, living in at least four different municipalities between October, 1978, and May, 1979. Appellant testified that during this period he could not find appellee or his son. In fact, he stated that he did not learn of appellee's whereabouts until after this adoption action was filed on November 3, 1980. *Appellee admitted that she never advised appellant of these moves nor of her addresses.* She also conceded that she did not notify the court clerk's office — to which support payments were sent — of any of her moves or address changes until December 23, 1980. Thus, it was after she filed this adoption action and nineteen months after her last move before she informed the court where she was living. One must remember that the trial court and this Court's majority, in dispensing with appellant's consent to the adoption of his son, rely on the period from February, 1979, through December, 1980, finding that during that time appellant failed to support or communicate with his child. I must say that if appellee's acts do not justify appellant's failure to support or contact his child, few cases will present facts that offer justification.

In conclusion, I again register my dissatisfaction with our appellate courts' treating adoption cases as though they were custody actions. I will be the first to admit that appellant might not fit the role of a model parent. However, our courts in post-decretal actions (and I believe rightfully so) have taken a dim view of fathers or mothers who fail to support and care for their children; accordingly, they have granted judgments for support arrearages, and have incarcerated parents who fail to fulfill their legal responsibilities to their offspring. In taking such actions, courts have recognized a parent's right to visitation with his or her child as being independent of a duty to support the child.

Adoption actions should be viewed differently. After all, in divorce cases, courts enforce support and visitation orders, recognizing the importance of the family relationship. In contrast, courts in adoption cases sever family ties —an action that should be taken only when the evidence clearly reflects that a parent has abdicated his or her

responsibility to a child. Unless such abdication is shown, I intend to dissent from any decision that upholds the severance of a family relationship, especially so long as § 56-207 (a) (2) remains a part of our Adoption Code and is construed in the manner it has been construed by our appellate courts.