John F. MANUEL *v.* Ronald Harold McCORKLE and Katherine Marie Manuel McCorkle

CA 87-321                                        749 S.W.2d 341

Court of Appeals of Arkansas
En Banc
Opinion delivered May 4, 1988

94

*Brick & Stokes, P.A.*, for appellant.

*Hale, Fogleman & Rogers*, for appellees.

GEORGE K. CRACRAFT, Judge. John F. Manuel appeals from an order of the Crittenden County Probate Court granting the petition of Ronald Harold McCorkle and Katherine Marie McCorkle for the adoption of two children of the former marriage of John Manuel and Katherine McCorkle. He contends that the court's findings that his consent to the adoption was not required and that it was in the best interest of the minors that they be

adopted by appellee Ronald McCorkle are not supported by the evidence. We disagree and affirm.

It is well settled that statutory provisions for the adoption of minors are to be strictly construed and applied. *Bemis* v. *Hare*, 19 Ark. App. 198, 718 S.W.2d 481 (1986). Under Ark. Stat. Ann. § 56-206 (Supp. 1985), a petition to adopt a minor may not be granted without written consent of the parents, unless that consent is not required in the subsequent section. Arkansas Statutes Annotated § 56-207 (Supp. 1985) provides that consent is not required of a non-custodial parent if that parent, for a period of at least one year, has failed significantly and without justifiable cause to provide for the care and support of the child as required by law or judicial decree.

The party seeking to adopt a child without the consent of a natural parent must prove by clear and convincing evidence that the failure to support the child not only continued for at least one year but also that it was willful, intentional, and without justifiable cause. Because one should not be permitted to assert a right until the facts on which it is predicated have accrued, the one-year period after which the parent may lose his right to consent to the adoption must accrue before the petition for adoption is filed. *Dixon* v. *Dixon*, 286 Ark. 128, 689 S.W.2d 556 (1985); *Dale* v. *Franklin*, 22 Ark. App. 98, 733 S.W.2d 747 (1987). The term "failed significantly without justifiable cause" does not mean that the parent must have failed totally but denotes a failure that is meaningful, important, and willful. *Bemis* v. *Hare, supra.*

The mere fact that a parent has forfeited his right to have his consent to an adoption required does not mean that the adoption must be granted. The trial court must further find from clear and convincing evidence that the adoption is in the best interest of the child. *Bemis* v. *Hare, supra.* On appellate review, we will reverse the trial judge's determinations only if they are clearly erroneous or clearly against a preponderance of the evidence. *Dixon* v. *Dixon, supra; Brown* v. *Johnson,* 10 Ark. App. 110, 661 S.W.2d 443 (1983); Ark. R. Civ. P. 52(a).

The appellant first contends that the trial court erred in its finding that the appellant's consent to the adoption was not required because he had failed significantly to support his two

minor children without justifiable cause for a period of at least one year. We do not agree.

Appellant and appellee Katherine McCorkle were married in 1979, separated late in the summer of 1984, and were divorced on February 11, 1985, by a decree which awarded custody of the minors to Mrs. McCorkle and ordered appellant to pay $25.00 per week for the support of the two children. Mrs. McCorkle testified that, from the date of their separation until after the petition for adoption of the children was filed on May 6, 1986, appellant paid a total of $25.00 for the support of the children and had given them a coloring book. She testified that when she and appellant separated she had no money or place to live and was forced to take her two children to live with her mother and sisters until she obtained a public grant for dependent children and public housing. During the period before she received these two grants, she and the children were forced to exist entirely on money and Food Stamps which her mother and sister shared with her. After she obtained welfare assistance, she was unable to even furnish the housing provided her. Her sister gave her two beds for the children, and her mother gave her a mattress and box spring which she placed on the floor for her own use. She testified that she and the two children continued to live on public welfare funds, with no help from the appellant, until she obtained several jobs and then married the appellee, who has supported them since their marriage on November 18, 1985.

She stated that, although there was a brief attempt at reconciliation in the fall of 1984, the appellant did not then furnish any support but forced her and the children to live on welfare payments. The appellant admitted that this was true. Mrs. McCorkle's testimony as to the poverty to which she and the children were subjected for a period in excess of one year was amply corroborated by the testimony of other witnesses.

Appellant testified that, although directed to make his support payments through the registry of the court, he had made his payments to Mrs. McCorkle directly but had no other proof of having done so. He further testified that, in any event, his failure to support the children was not willful because he had injured himself and had been unable to work as a truck driver until after the petition was filed in May of 1986. However, his employer

testified that he knew nothing of such an injury and stated that there was work available for appellant at a substantial weekly wage during that entire period if he had wanted it. There was also evidence that, in February of 1986, the court's order for visitation had to be changed because of appellant's "work schedule" driving trucks. There was further evidence that, in February of 1986, appellant was found to be in arrears in his child support payments in the amount of $1825.00, and was given a three-month period to see what he could do about paying some part of the arrearage. He made no payments pursuant to this order. He had remarried and was providing support for his new wife, her child, and a child of that marriage.

On this conflicting evidence, we cannot conclude that the trial court's finding that appellant had significantly, willfully, and without justification failed to support his children for a period in excess of one year prior to the date of the filing of the petition for adoption is clearly erroneous.

Appellant next contends that, even if we conclude that his consent was not required because of his failure to provide for the care and support of his children, the trial court erred in finding that it was in the best interest of the children to be adopted. We do not agree. It has been stated that, all things being equal, the law will favor a natural parent over all others. In these cases, we have recognized that temporal and material enhancements are not conclusive of where the best interest of a child lies, but is a fact which may be considered in a proper case. Consideration must also be given to the fostering of moral, cultural, and spiritual values as well as family relationships. Best interest does not necessarily mean a higher station in life, and those parents who support their child in their own style of life, however poor or humble, should not be deprived of parental privileges except under compelling circumstances. *Bush* v. *Dietz*, 284 Ark. 191, 680 S.W.2d 704 (1984). This rule, however, is premised on the assumption that the parent is in fact contributing to the care and support of his children to the best of his abilities even though his abilities be meager.

It is well settled that parental rights are not proprietary ones and are subject to the faithful performance of the correlated duties and the obligations of a parent to care for

and protect the child. The law will protect the preferential right of a parent only so long as that parent discharges these correlated duties, and this preference should not be continued beyond the point where those duties and obligations are ignored or have been shifted to others. *Watkins* v. *Dudgeon*, 270 Ark. 516, 606 S.W.2d 78 (Ark. App. 1980); *Pender* v. *McKee*, 266 Ark. 18, 582 S.W.2d 929 (1979). It has been stated that this preference for natural parents is based on the presumption that they will take care of their children, bring them up properly, and treat them with kindness and affection, but when that presumption has been dissipated the courts will interfere and place the child where those duties will be discharged by someone more willing and able to do so. *Loveless* v. *May*, 278 Ark. 127, 644 S.W.2d 261 (1983); *Brown* v. *Johnson, supra.*

It is impossible to carefully define that point at which the interests of a child are best fostered by terminating existing parental relationships and creating new ones. Each case must be determined on its own peculiar facts and circumstances. For this reason, our courts very wisely give great deference to the superior position of the trial court to make that determination. In these cases, a heavy burden is placed on the trier-of-fact to utilize to the fullest extent his powers of perception in the evaluation of witnesses, their testimony, and where the interest of the child actually lies. In no case does the superior position, ability, opportunity, and insight of the trial judge in observing the parties carry greater weight than those cases involving minor children. *Watts* v. *Watts*, 17 Ark. App. 253, 707 S.W.2d 777 (1986).

Here, the chancellor found that the appellant unjusti-fiably failed to discharge his duties of care and support for these children. Instead, he permitted them to be supported by private and public charity and to exist in abject poverty and deprivation until such time as the mother married a person ready, willing, and able to provide the care, support, and protection they were entitled to receive. Since that time, the appellant continued his renunciation of those obligations to his children and was content to let appellee Ronald McCorkle furnish the children with comfortable housing, adequate food and clothing, and those additional necessities and pleasures that a child ought to have. In the home of the appellees, these children are secure and ade-quately provided for. It is clear from the chancellor's closing

remarks that he did consider all of the factors bearing on the best interests of the children, and he concluded that, "having considered it all, it is a difficult case, but I feel it is in the best interests of the children to grant the adoption." Based on our review of the record, and giving due deference to the superior position of the chancellor to make that determination, we cannot conclude that his findings are clearly erroneous.

Affirmed.

CORBIN, C.J., and JENNINGS and COOPER, JJ., dissent.

DONALD L. CORBIN, Chief Judge, dissenting. I agree with the majority that appellant's consent to the adoption was not required because he failed significantly without just cause to support his children. However, I do not agree that the trial court was correct in finding that the adoption was in the children's best interest.

There is little dispute that appellant has failed miserably to support his minor children. On first blush it appears that appellant seeks to accept the privileges of parenting without accepting the responsibility that goes with it. Even so, failure to support is more properly addressed through contempt proceedings rather than termination of parental rights. The primary consideration in adoption proceedings is the best interest of the child not reward or punishment of the parent. *See McKee* v. *Bates*, 10 Ark. App. 51, 661 S.W.2d 415 (1983).

The matter before us is not a custody determination. Appellant admits that custody is proper in the appellees. He merely seeks to avoid termination of his relationship with his children. A final decree of adoption has the effect of relieving the natural parent of all rights and terminating all legal relationship between the child and his relatives including the natural parent. *Irvan* v. *Kizer*, 286 Ark. 105, 689 S.W.2d 548 (1985).

The record in this case bears out the extreme hostility between the adoptive father and the natural father. On at least one occasion, the adoptive father was arrested in connection with an altercation between the two. There is little doubt that because of this hostility, appellant will be denied all contact with his children. More importantly, these young children will not understand the legalities of the adoption proceedings for many years,

but will soon find out that their adoptive father can prevent them from seeing their father when they want.

The chancellor in his findings stated, "I am convinced that there is a definite affection between Mr. Manuel and his children. I have observed the children in the courtroom previously with Mr. Manuel . . . . I recognize that these children come from a large family and there is a definite affection on the part of all members of the family for these two children." However, he held it to be in the children's best interest to deprive them of this relationship with their father. I cannot agree. They have spent two weekends every month with the appellant since separation and at least two weeks with him each summer. Appellant drives three hours one way to pick them up so that they may spend time with him and he with them.

We have said on numerous occasions that the purpose of the statute allowing the father's consent to be excused for failure to support is to provide a child with a real father instead of one who, by his conduct, has proven to be a father by blood alone. *See, e.g., Bemis* v. *Hare*, 19 Ark. App. 198, 718 S.W.2d 481 (1986). Obviously, that is not the case here. The children will be deprived of a relationship with their father which has been developing over their entire lives and should continue to do so. Furthermore, their relationship with their paternal grandmother and half-sibling are irrevocably terminated. The chancellor noted in his findings that the case was a difficult one. Difficult cases should be resolved in favor of the natural relationship. Because our policy has been to favor maintaining the natural relationship when adoption is sought against a natural parent's protest, *Lindsey* v. *Ketchum*, 10 Ark. App. 128, 661 S.W.2d 453 (1983), I would reverse the granting of the petition for adoption under the circumstances in this case.

COOPER and JENNINGS, JJ., join in this dissent.