Sylvia LUEBKER and David Luebker *v.*
ARKANSAS DEPARTMENT of HUMAN SERVICES

CA 05-152                                      217 S.W.3d 172

Court of Appeals of Arkansas
Opinion delivered November 16, 2005

*Stephen W. Tedder*, for appellant.

*Gray Allen Turner*, for appellee.

LARRY D. VAUGHT, Judge. Sylvia and David Luebker appeal from an order of the Circuit Court of Pulaski County denying their petition to adopt three minor children, C.C. (age seven), E.C. (age six), and D.C. (age four). The Luebkers contend that the trial court erred (1) in its determination that the Department of Human Services did not unreasonably withhold its consent to the adoption and (2) in its conclusion that it was not in the best interest of the children that they be adopted by the Luebkers. We affirm.

Sylvia Luebker is the putative biological grandmother of the children whom she sought to adopt. David Luebker is Sylvia's husband and the "putative step-grandfather" of the children. Two of the three children initially came into foster care following the arrest of their putative father, Scott Cantrell. Thereafter, the third child was brought under the jurisdiction of the trial court. As part of the original plan for parental reunification, the court ordered the parents to establish legal paternity over the children; however, paternity was never established.

During the pendency of the case, the Luebkers intervened and sought custody of the children. On May 8, 2001, prior to the Luebkers' formal intervention, the court placed the children in the Luebkers' temporary legal custody on the conditions that they not place the children in the custody of any other person without first obtaining a court order, that they not change their home address without first giving DHS advance notice, and that an expedited home study be completed on the Luebker residence. At that time, the trial court's goal for the case remained reunification with either of the natural parents.

On January 16, 2002, DHS filed an emergency motion for a change of custody after it obtained information — believed to be

credible — that Mrs. Luebker placed the children with someone else, in direct contravention of the court's order. As a result of this motion and subsequent hearing, all three children were returned to DHS custody. Following a lack of any significant progress in achieving the goal of reunification — notably the putative father's continued incarceration and the fact that during this time the children's mother was convicted of murdering her newborn child and was sentenced to seventy-seven years' imprisonment — the natural parents' rights were terminated after a hearing on May 27, 2003. At this same time, the court also considered — and denied — a motion from the Luebkers to intervene and to transfer custody.

On January 30, 2003, the Luebkers filed a petition seeking to adopt the three minor children. A hearing on the matter was held on July 9, 2004. At the hearing, the DHS staff member assigned to the case testified that the agency was unwilling to consent to the adoption and outlined a myriad of concerns with the proposed adoption. These concerns included: (1) a psychological evaluation performed by Dr. Paul Deyoub concluding that Mrs. Luebker was not up to the task of parenting the children; (2) Mrs. Luebker's age of sixty, which exceeded the agency's guideline calling for a maximum-age limit of fifty-five; (3) the fact that Mrs. Luebker was totally disabled and had health issues of rheumatoid arthritis, fibromyalgia, and lupus; (4) the fact that after the court had placed the children in the Luebkers' temporary custody, the agency was required to provide occasional day care and respite care when Mrs. Luebker was too tired to care for the children due to her lupus or other health problems; (5) an indication from Mrs. Luebker that if the children's mother were paroled, the mother would be allowed to reside in the Luebkers' home, and the Luebkers might return the children to their mother's care; (6) the fact that, while in the Luebkers' custody, the two elder children were entrusted to the care of a third party, Shaina Wright (a "relative" through marriage); (7) the fact that prior to the putative father's immediate incarceration he was residing in the Luebker home and engaging in improper drug activities while there. Also, the agency representative expressed a generalized concern about Mrs. Luebker's everyday ability to raise the children until they were eighteen.

In response, Mrs. Luebker argued that the children had only been allowed to visit Ms. Wright for a weekend. However, DHS argued that the evidence proved that the Luebkers were attempting a longer and more significant placement action. DHS based its

contention, in part, on the fact that Ms. Wright had contacted the agency about the possibility of being a foster parent for the children. Although this matter was a highly debated and disputed topic in three separate hearings, the court did not credit the Luebkers' testimony on the subject and refused to return the children to their custody.

The trial court went on to conclude that although DHS's concerns appeared well reasoned, appropriate, and in good faith, the overarching question concerned the best interest of the children. As to that end, the trial court found that "the [Luebkers] have not met their burden of proof that this adoption is clearly and convincingly in the children's best interest." First, the trial court noted that although the Luebkers' advanced age — standing alone — was not a great concern, that when it was coupled with the myriad of health problems from which Mrs. Luebker suffers and the young ages of the children it took on a "greater significance." Second, the trial court found that "in addition to the reasons stated by [DHS]," it had independent concerns about the Luebkers' "negative baggage." Specifically, the court focused on the fact that two of Sylvia's adult sons were "in and out of jail" after trouble with drugs, alcohol, sexual assault, and other convictions. The court further mentioned that, although not related to the Luebkers, the children's mother "is now a convicted infant murderer who tries to maintain contact with the Luebkers from prison." Third, the court expressed concern about the Luebkers' ability, commitment, and willingness to raise these children until they are adults. Specifically, the court was concerned about the permanency of the placement, noting that it believed "it would be only a matter of time before Mrs. Luebker would find it necessary to make other arrangements for the placement of these children." Finally, the court credited DHS's testimony that these three young children were very adoptable and that they could be adopted as a sibling group. In sum, the court determined that, "Based upon the record before the court, the court finds that it would be in the children's best interest to be adopted as a sibling group by another more appropriate adoptive family."

On appeal, the Luebkers argue that the trial court erred in its best interest determination and in its decision that DHS was reasonable in its decision to withhold consent. A trial court may grant a petition for adoption if it determines at the conclusion of a hearing that the required consents have been obtained or excused *and* that the adoption is in the best interest of the child.

*Bemis v. Hare*, 19 Ark. App. 198, 718 S.W.2d 481 (1986) (emphasis added). However, even where the trial court has determined that parental consent to an adoption is not required, the trial court still must find from clear and convincing evidence that the adoption is in the best interest of the child. *Waldrip v. Davis*, 40 Ark. App. 25, 842 S.W.2d 49 (1992). The burden rests on the one seeking adoption to prove by clear and convincing evidence that adoption is in the child's best interest. *Manuel v. McCorkle*, 24 Ark. App. 92, 749 S.W.2d 341 (1988). The ultimate determination of best interest is the primary objective of the trial court in custody matters. *Manuel, supra.* We defer to the trial court's personal observations when the welfare of a young child is involved because we know of no other case in which the superior position, ability, and opportunity of the trial court to observe the parties carries as great a weight as one involving minor children. *King v. Lybrand (In re Lybrand)*, 329 Ark. 163, 946 S.W.2d 946 (1997). On appeal, we review the evidence de novo, but we will not reverse a trial court's findings unless it is shown that they are clearly contrary to the preponderance of the evidence. *Mason v. Mason*, 82 Ark. App. 133, 111 S.W.3d 855 (2003).

In this case, we have limited our review to the *independent* findings of the trial court, discounting any findings based on the court's conclusion that it should give "some deference to [DHS's] refusal to consent to the adoption." The remaining factual determinations and findings made by the court are more than ample to support an independent conclusion relating to the children's best interest. Because the trial court's independent findings were not contrary to a preponderance of the evidence and the court's conclusion that the adoption is not in the children's best interest is supported by clear and convincing evidence, we affirm the trial court's denial of the adoption petition. Further, because we have affirmed the trial court's best interest finding, the issue of whether DHS improperly withheld its consent need not be addressed.

Affirmed.

GRIFFEN and ROAF, JJ., agree.