Susan Ellen TOM *v.* Kandi COX

CA 07-650                                                          278 S.W.3d 110

Court of Appeals of Arkansas
Opinion delivered February 27, 2008

*Jim Hamilton*, for appellant.

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *M. Samuel Jones, III*, for appellees.

KAREN R. BAKER, Judge. Appellant, Susan Tom, appeals from a decision by the Pulaski County Circuit Court denying her petition for adoption of the minor child, A.M.G. Ms. Tom's sole argument on appeal is that the trial court erred in finding that appellee Cox had not unreasonably withheld her consent to the adoption and should have granted appellant's petition for adoption. We disagree and affirm.

On April 18, 2005, A.M.G. was born to Geneva Griffith in Ft. Smith, Arkansas. Immediately following her birth, A.M.G. was taken to Arkansas Children's Hospital for treatment for epidermolysis bullosa, junctional non herlitz (an incurable condition in which the upper layer of the skin does not properly bond to the sublayer, resulting in serious injury from even the slightest pulling

or twisting of the upper layer of the skin).[1] Also on that day, Ms. Griffith relinquished her parental rights to A.M.G. On May 6, 2005, the Saline County Circuit Court ordered that Kandi Cox, President of ABBA Adoption, LLC, serve as temporary guardian of the minor child in order to facilitate an adoption.

Susan Tom of Fairfield, California, is the mother of eleven adopted children with disabilities, one of which suffers from recessive dystrophic epidermolysis bullosa, a disease similar to the disease from which A.M.G. suffers. Ms. Tom learned about A.M.G. through an internet-based support group for children with epidermolysis bullosa. Ms. Tom began communicating with Ms. Cox about A.M.G. and offering Ms. Cox her support.

On July 11, 2005, after an unsuccessful adoption attempt, Ms. Cox asked if Ms. Tom would be interested in adopting A.M.G. Ms. Tom responded that she would be interested in adopting the child; however, the placement would need to be postponed until October because her family was going to be featured on the television show Extreme Makeover Home Edition. Because of her spotlight on the show, the Tom family received a new home that was specially designed for children with disabilities. The home had seven bedrooms, six bathrooms, and an elevator. The family also received a $300,000 trust to be used for the children's special needs or for their education.[2]

On August 17, 2005, the Saline County Circuit Court modified its previous order, appointing Ms. Cox as guardian of the child and transferring the case to Pulaski County. As planned, on October 19, 2005, Ms. Tom arrived in Arkansas to meet with Ms. Cox and sign a placement agreement, an at-risk placement notice, and an agreement for adoption services with ABBA. Ms. Tom paid ABBA $4900 for adoption services and took custody of the child. Ms. Tom and A.M.G. traveled to California to be with the remainder of the family, and A.M.G. remained in California with her new family for ten months.

In the meantime, the requirements for the adoption were being completed. Ms. Tom had contacted the appropriate agency

---

[1] The child also later began to suffer from seizures and episodes of holding her breath and passing out.

[2] In addition to the $300,000 trust from Extreme Makeover Home Edition, a trust by Ms. Tom had previously been established (worth approximately $117,000) to be used for the children's education.

to conduct the home study, and the home study had been completed. As a result of the home study, Ms. Tom was recommended as an adoptive parent; however, there was testimony that the post-placement visits were not completed. Also during this time, Ms. Tom was attempting to obtain financial assistance to which A.M.G. was entitled, through social security or the American Adoption Program.

The testimony showed that in April 2006, the birth mother, Ms. Griffith, began residing in the home of Kandi and Chris Cox. Ms. Griffith testified that she began living with the Cox family because she was in need of a new living arrangement. She also testified that she still lived with the Cox family and that she did not know how long she would reside there.

Also in April 2006, Ms. Cox called Ms. Tom and requested that Ms. Tom bring A.M.G. to Arkansas for a visit. Because it was customary for her family to make a long motor home trip in the summer, Ms. Tom agreed to stop in Arkansas for a visit. Ms. Tom and her family arrived in Little Rock on August 2, 2006. While visiting, she and her children enjoyed meals and various other activities with the Cox family. Ms. Cox testified that her overall observation of the relationship and interaction between Ms. Tom and the child was appropriate.

On August 4, 2006, the Cox family, the Tom family, and Ms. Griffith dined together at the Olive Garden restaurant. At the time, A.M.G. was seventeen months old. While sitting in a highchair, A.M.G. injured her knee and began crying. Because the child was inconsolable, Ms. Tom took the child out of the restaurant to the family's motor home. Ms. Tom was able to calm the child, and she moved the motor home near the restaurant's entrance into a handicap parking place. She attempted to call her children on their cell phone, but got no answer. She did not attempt to call Ms. Cox's cell phone. She then exited the motor home and returned to the restaurant.

Ms. Tom testified that she informed the restaurant employees near the entrance that she needed to pay her bill and that she would return shortly to move the motor home. She then went to the table hoping to pay the bill. When she discovered that the bill had not yet been delivered to the table, she requested it from the wait staff. She sat down while she waited for the check. Ms. Tom allowed her teen-aged daughter Chloe to go out to the motor home while she waited. She estimated that only three and a half

minutes passed between the time she returned to the table until Chloe got out to the motor home. She testified that while she waited on the bill, there was no discussion of the child or her condition.

On the other hand, Ms. Cox testified that after Ms. Tom was in the motor home with A.M.G., she returned to the table and began to finish her meal. Ms. Cox testified that although there was some mention of the check as Ms. Tom was trying to console A.M.G. (specifically, Mr. Cox and Ms. Cox told Ms. Tom not to worry about the bill for the dinner), Ms. Tom did not mention the check after she returned from the motor home. As Ms. Tom finished her meal, Ms. Cox asked about the child, and Ms. Tom responded that she had fallen asleep in the motor home. Ms. Cox testified that the air conditioning was on and the doors were locked. Ms. Tom then reluctantly granted Chloe's request to go out to the motor home. Ms. Cox estimated that approximately five minutes passed from the time Ms. Tom returned to the table until Chloe went out to the motor home. After another ten minutes passed, Ms. Cox went out to check on the two children. She found A.M.G. awake and playing. In her opinion, it was not in A.M.G.'s best interest to be left alone in the motor home because of her various medical conditions.[3]

After the incident, the parties left the restaurant and had no contact until the next morning. At six o'clock in the morning on August 5, 2006, Ms. Cox and two North Little Rock police officers arrived at the campground where Ms. Tom and her family were staying. Ms. Cox claimed that Ms. Tom had neglected and improperly abandoned the child in the motor home the night before. Officer Richard Beaston testified that he accompanied Ms. Cox only to investigate a possible child abuse situation. To his knowledge, there was no plan to assist with an exchange of the child or to make an arrest. The investigation revealed no signs of abuse or neglect. Nonetheless the child was given to Ms. Cox. Ms. Tom testified that she willingly handed the child over because of the officers' presence and in order to avoid a confrontation in front of her other children. Following the exchange, Ms. Cox sent a

---

[3] Mr. Cox testified that approximately fifteen to twenty minutes passed before anyone went to the motor home to check on the child. Ms. Griffith also testified that approximately thirty minutes passed before anyone checked on the child, but in her deposition, Ms. Griffith estimated that the time period was only twenty minutes. Nonetheless, the trial court found that Mr. Cox's and Ms. Griffith's "accounts of the elapsed time seemed exaggerated."

letter to Ms. Tom informing her that Ms. Cox would no longer recommend that she adopt the child.[4]

On September 6, 2006, Ms. Tom filed her petition to adopt A.M.G. Ms. Tom also filed a motion to consolidate the petition for adoption and the petition for guardianship (filed by Ms. Cox and previously transferred to Pulaski County Circuit Court). Ms. Cox and ABBA responded to both pleadings. After the hearing, the trial court entered an order consolidating the petition for adoption and the petition for guardianship, and denying the petition for adoption on the basis that Ms. Tom failed to prove that Ms. Cox unreasonably withheld her consent for the adoption of A.M.G. In the order, the trial court also concluded that Ms. Cox was the lawful guardian of the child and that there was no testimony offered to show that she had violated her fiduciary responsibilities with regard to the guardianship. This appeal followed.

In *Luebker v. Arkansas Department of Human Services*, 93 Ark. App. 173, 217 S.W.3d 172 (2005), this court set forth our standard of review in adoption cases:

> A trial court may grant a petition for adoption if it determines at the conclusion of a hearing that the required consents have been obtained or excused and that the adoption is in the best interest of the child. *Bemis v. Hare*, 19 Ark. App. 198, 718 S.W.2d 481 (1986) (emphasis added). However, even where the trial court has determined that parental consent to an adoption is not required, the trial court still must find from clear and convincing evidence that the adoption is in the best interest of the child. *Waldrip v. Davis*, 40 Ark. App. 25, 842 S.W.2d 49 (1992). The burden rests on the one seeking adoption to prove by clear and convincing evidence that adoption is in the child's best interest. *Manuel v. McCorkle*, 24 Ark. App. 92, 749 S.W.2d 341 (1988). The ultimate determination of best interest is the primary objective of the trial court in custody matters. *Manuel, supra.* We defer to the trial court's personal observations when the welfare of a young child is involved because we know of no other case in which the superior position, ability, and opportunity of the trial court to observe the parties carries as great a weight as one involving minor children. *King v. Lybrand (In re Lybrand)*, 329 Ark. 163, 946 S.W.2d 946 (1997). On appeal, we review the evidence de novo, but we will not reverse a trial court's

---

[4] Ms. Cox retained custody of the child after August 5, 2006.

> findings unless it is shown that they are clearly contrary to the preponderance of the evidence. *Mason v. Mason,* 82 Ark. App. 133, 111 S.W.3d 855 (2003).

*Luebker,* 93 Ark. App. at 176–77, 217 S.W.3d at 174–75.

Arkansas Code Annotated section 9-9-206(a)(3) (Supp. 2007) states that "a petition to adopt a minor may be granted only if written consent to a particular adoption has been executed by any person lawfully entitled to custody of the minor or empowered to consent." One exception to this requirement is that the consent of a legal guardian is not necessary if the guardian "has failed to respond in writing to a request for consent for a period of sixty (60) days or who, after examination of his or her written reasons for withholding consent, is found by the court to be withholding his or her consent unreasonably." Ark. Code Ann. § 9-9-207(a)(8) (Supp. 2007).

■ The issue at hand in this case is whether the circuit court's finding that Ms. Cox reasonably withheld her consent to the adoption is clearly erroneous. We find that it is not. This case centers around an incident at a local restaurant when Ms. Tom left the child alone in a motor home parked near the door of the building for a short period of time. While both Ms. Cox and Ms. Tom had somewhat different versions of the incident, the trial court focused on the special medical needs of the child — including her epidermolysis bullosa condition, seizures, and episodes of holding her breath and passing out. Considering the events of the evening where the child injured herself while simply wiggling in her high chair, it was clear that the child could have suffered additional injury while in the motor home unattended by an adult, even for a short period of time. Even though it appeared as if the Cox family wanted to clear the way to adopt A.M.G. themselves, Ms. Cox testified that she withheld her consent based on Ms. Tom's decision to leave A.M.G. alone in the motor vehicle without adult supervision. Under such facts where Ms. Tom left the child in the motor home alone, we cannot say that the circuit court erred in finding that Ms. Cox was not unreasonably withholding her consent to the adoption of A.M.G. Accordingly, we affirm.

Affirmed.

GRIFFEN and VAUGHT, JJ., agree.