Cite as 2021 Ark. App. 387

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-20-711

|  |  |
|---|---|
| | **Opinion Delivered** October 20, 2021 |
| IN THE MATTER OF THE ADOPTION OF S.C., A.H., AND E.H. | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. 72JV-18-63] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES; AND LUZ MENDEZ AND CESAR GARCIA APPELLANTS | HONORABLE STACEY ZIMMERMAN, JUDGE |
| | AFFIRMED |
| V. | |
| A.H. AND E.H., MINOR CHILDREN; AND JAMES AARON WILLARDSON AND MEGAN WILLARDSON APPELLEES | |

## RAYMOND R. ABRAMSON, Judge

The Arkansas Department of Humans Services (DHS); and Luz Mendez and Cesar Garcia appeal the Washington County Circuit Court order denying Luz and Cesar's petition to adopt twins, A.H. and E.H. (born in September 2015). They jointly argue that the circuit court erred by denying the adoption petition because the court ignored the relative preference and the preservation of the sibling bond in dependency-neglect cases. We affirm.

Luz is A.H. and E.H.'s second cousin. Cesar is Luz's fiancé. Megan and James Aaron Willardson are A.H. and E.H.'s foster parents. A.H. and E.H. were placed in the

Willardsons' home in a dependency-neglect proceeding in 2018 following their removal from the custody of their mother, Adela Chavez.

Specifically, on January 17, 2018, DHS filed a petition for emergency custody and dependency-neglect with respect to A.H. and her siblings Y.C., S.C., and J.C. following Adela's arrest. E.H. was not in the home at the time of the arrest, but Adela brought her to the DHS office the following day. On January 22, the circuit court entered an ex parte order for emergency custody placing all the children in DHS's custody. On January 24, the court found probable cause for the emergency custody.

On March 14, the court adjudicated the children dependent-neglected based on Adela's neglect and parental unfitness. The court found that Adela had allowed her boyfriend to sexually abuse Y.C. and had helped him evade authorities. Further, the court found that Adela had permitted the twins to be burned with cigarettes and had exposed the children to "hellish conditions." In the adjudication order, the court noted that A.H. and E.H. had been placed with the Willardsons and that S.C., Y.C., and J.C. had been placed in other foster homes. On October 22, Adela gave birth to another child, Baby M.

On February 19, 2019, the attorney ad litem petitioned to terminate Adela's parental rights to A.H., E.H., Y.C., S.C., and J.C. On March 7, the court authorized S.C. to transition to Luz and Cesar's home. In April, the court permanently placed Y.C. with her biological father and J.C. with his biological father.

On April 25, the court held a termination hearing. At the hearing, Luz and Cesar declined placement of A.H. and E.H. in their home. On May 17, the circuit court terminated Adela's parental rights. In the termination order, the court authorized DHS to

consent to the adoption of the children without further notice to, or consent of, Adela. Adela appealed the termination order to this court.

During the pendency of Adela's appeal, on August 30, the court entered a posttermination review order. The court noted that Luz and Cesar were in the process of adopting S.C. and that they also wanted to adopt A.H. and E.H. However, the court found that it was not in the best interest of the children to move them during the pendency of Adela's appeal.

On October 11, Luz and Cesar moved to intervene in the dependency-neglect proceeding and petitioned for adoption of the twins and S.C. They attached Adela's consent to the adoption. On October 14, DHS responded and did not oppose Luz and Cesar's intervention; however, it argued that Adela's consent to the adoption was invalid due to the termination of her parental rights, and it did not consent to Luz and Cesar's adoption petition at that time. On October 18, the ad litem responded and opposed the adoption petition.

On December 16, the Willardsons moved to intervene in the dependency-neglect proceeding and petitioned to adopt A.H. and E.H. They stated that the twins had been in their household since January 2018 and that they wished to adopt them.

On January 9, 2020, the court entered a posttermination review order, and it granted Luz and Cesar's and the Willardsons' intervention motions. On February 5, this court affirmed the termination of Adela's parental rights.

On May 13, 15, and 29, the circuit court held a hearing on the adoption petitions.[1] Michelle DeRose, A.H. and E.H.'s therapist, testified that she had worked with the twins for over two years. She stated that they had been diagnosed with posttraumatic stress disorder and other specified trauma and stress-related disorders, and she noted that A.H. has physical outbursts that can become violent. She explained that the twins' removal from the Willardsons' household would cause significant regression and trauma. She testified that the twins see the Willardsons as their parents and that they have a strong and healthy attachment to them. She recommended that the Willardsons continue to care for A.H. and E.H. and that they maintain their sibling relationships. She noted that A.H. and E.H. know Y.C. and S.C. as their biological siblings but that A.H. and E.H. do not remember their mother and that S.C.'s conversations about her trigger negative emotions in the twins.

Megan Willardson testified that she and her husband have five biological children living in their home along with A.H. and E.H. She stated that A.H. came into their care on January 18, 2018, and that E.H. arrived the next day. At that time, the twins were two years and four months old.

Megan testified that both A.H. and E.H. exhibit atypical behaviors for their age and that they regularly receive therapy. She stated that removing the twins from her home would be a "disaster" and would erase the progress they have achieved over the past two years. She testified that she and Aaron had facilitated the twins' contact with their siblings but that the twins almost always exhibit negative behaviors following the visits. Aaron testified that A.H.

---

[1]The court first heard the Willardsons' adoption petition and then heard Luz and Cesar's adoption petition. Counsel reserved closing statements until the court had heard both petitions.

and E.H. now refer to him and Megan as "mom" and "dad." He stated that removing the twins from their home would be "catastrophic."

Luz testified that she is twenty-three years old and that she has two children of her own. She stated that she wants to adopt A.H., E.H., and S.C. She noted that she was present at their births and that they know her as an "aunt." She testified that before the children entered DHS custody, she visited them about twice a month except for a period when they lived out of state with Adela.

Luz explained that in January 2018, she learned that the children had entered DHS custody from a detective investigating the sexual-abuse allegations against Adela's boyfriend but that he did not provide information concerning the dependency-neglect case. She contacted DHS in May 2018 and asked to be considered for placement. She noted that she had been living with her mother but that in July 2018, she learned that the living arrangement prevented placement of Adela's children with her. She and Cesar moved into their own home in August 2018. She testified that she and Cesar attended DHS meetings and staffings as well as court proceedings. She stated that in March 2019, DHS placed S.C. in their home and that she continued to ask DHS for placement of A.H. and E.H. However, in May 2019, the court placed Baby M in their home. Luz testified that she believed that their home had been approved for only two foster children, so she assumed that A.H. and E.H. could not be placed with her. Thus, she declined placement of the twins at the termination hearing.

Luz testified that following the termination hearing, a DHS employee visited her home and that she reminded the worker of her continued interest in adopting A.H. and

E.H. despite her placement being full. Luz explained that the worker assisted them in obtaining a waiver and that her home is now approved for the twins.

Luz testified that Baby M began transitioning back to Adela's custody in September 2019 and that Baby M is now in Adela's full custody. Luz also stated that on October 2, 2019, Y.C. began living with her because Y.C.'s father no longer wanted to care for her.

Kari Horton testified that she is a DHS family-service worker and that DHS recommends that A.H. and E.H. be placed in Luz and Cesar's home with their siblings. She stated that siblings who are placed together have better outcomes, and she further explained that sibling relationships tend to decline over time when they are separated. She testified that at the termination hearing, Luz and Cesar declined placement of A.H. and E.H. because they could not accommodate the twins at that time, not because they did not want them. Horton acknowledged A.H.'s and E.H.'s attachment to the Willardsons, and she agreed that they would likely regress if they transitioned to Luz and Cesar's home; however, she stated that Luz and Cesar had committed to continuing the twins' therapy. Further, as to the transition process, Horton explained that Luz and Cesar had been regularly visiting A.H. and E.H. for several months and that if the court granted their adoption petition, the visits would increase week by week until the transfer of custody.

Ritchie McFarland, an adoption specialist, testified that DHS consented to Luz and Cesar's adoption of A.H., E.H., and S.C. McFarland stated that DHS preferred Luz and Cesar for placement of A.H. and E.H because of the familial relationship. He further testified that placement with Luz and Cesar would preserve the twins' relationships with their siblings

and that reports indicated that the siblings have a healthy attachment. He further stated that a home study indicated that Luz and Cesar's home met child-protections standards.

Laura Carpenter, S.C. and Y.S.'s therapist, testified that in December 2019, she had attended one session wherein S.C. and Y.S. visited with A.H. and E.H. and that they had a healthy interaction. She explained that she had been working with Y.S. on her separation from her parents and siblings. Carpenter stated that she is aware that Y.S. had been a victim of sexual abuse but that their therapy sessions had not focused on that abuse because Y.S. is not ready to discuss it. She testified that she had heard about Y.S.'s inappropriate sexual conduct but that she had not personally observed anything that prevented her from successfully functioning with other children in a home.

Following the hearing, on July 1, the circuit court entered an order granting Luz and Cesar's petition to adopt S.C. but denying the petition as to A.H. and E.H. The court found that Luz and Cesar had failed to show that it was in the best interest of the twins to be adopted by them. The court stated,

> [T]o remove the twins from the Willardsons who the twins view as their "safe parents" would clearly result in additional trauma to the twins, given their mental health diagnoses and the trauma they are working through. Although there is a preference to place children in foster care with a fit relative, the familial preference is NOT more important than the best interest of the twins. This Court is NOT going to create additional unnecessary major trauma for the twins! To change the twins' primary caregivers, to change the only home they have known for almost 2 ½ years, to change the twins' daily routine, and to change the children with whom the twins have lived for 2 ½ years all during the most formative time (age birth to five years old) in building healthy attachments, would irreparably damage the twins' sense of identity and belonging! If this Court removes the twins from the Willardsons, it would force more trauma on the twins and that is abusive. Additionally, continued placement of the twins with the Willardsons has not and will not preclude sibling visits in the future with half-siblings [S.C. and Y.C.]. Just like [S.C. and Y.C.] who do not live with their half-siblings, [Baby M and J.C.], the girls will still visit with them.

Also on July 1, the court entered a separate order denying the Willardsons' adoption petition of A.H. and E.H. without prejudice. The court found that the Willardsons had shown that it was in the best interest of A.H. and E.H. to grant the adoption; however, the court pointed out that their petition lacked the required consent of DHS. The court continued the goal of the case as adoption and ordered that A.H. and E.H. not be moved from the Willardsons' home. DHS and Luz and Cesar appealed the court order denying Luz and Cesar's adoption petition.

We review adoption proceedings de novo but will not reverse the decision of the circuit court unless its findings are clearly erroneous. *Cowan v. Ark. Dep't of Hum. Servs.*, 2012 Ark. App. 576, 424 S.W.3d 318. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the circuit court to judge the credibility of witnesses. *Id.* We give even greater deference to the circuit court's personal observations when the welfare of a young child is involved because there is no other case in which the superior position, ability, and opportunity of the circuit court to observe the parties carries as great a weight as one involving minor children. *Tom v. Cox*, 101 Ark. App. 388, 278 S.W.3d 110 (2008).

On appeal, DHS and Luz and Cesar jointly argue that the circuit court erred by denying Luz and Cesar's adoption petition as to A.H. and E.H. They argue that in determining best interest, the circuit court erroneously relied on the impact of their removal from the Willardsons' custody over the statutory preference for relative placement and the

twins' sibling bond with S.C. and Y.C. They assert that Luz and Cesar's home is appropriate, and they point out that the court granted the adoption petition as to S.C. and that Y.C. and Baby M had also been placed in their home.

The Willardsons and the minors argue that because Luz and Cesar petitioned for adoption of A.H. and E.H. nine months following the termination of Adela's parental rights, they are no longer entitled to the relative preference. They nevertheless assert that the circuit court considered the relative preference but concluded that it was not in the best interest of A.H. and E.H. to grant the adoption petition due to the trauma a change in custody would cause.

A circuit court may grant a petition for adoption if it determines at the conclusion of a hearing that the required consents have been obtained or excused and that the adoption is in the best interest of the child. *Canerday-Banks v. Barton*, 2018 Ark. App. 523; *Cowan v. Ark. Dep't of Hum. Servs.*, 2012 Ark. App. 576, 424 S.W.3d 318. Arkansas Code Annotated section 9-28-105 provides that in all custodial placements by DHS in foster care or adoption, preferential consideration shall be given to an adult relative over a nonrelated caregiver if (1) the relative caregiver meets all relevant child protection standards and (2) it is the best interest of the child to be placed with relative caregiver. *See also* Ark. Code Ann. § 9-9-102(a) (Repl. 2020).

However, no relative preference is given over foster parents following a termination of parental rights. *Suster v. Ark. Dep't of Hum. Servs.*, 314 Ark. 92, 858 S.W.2d 122 (1993); *Clark v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 223, 575 S.W.3d 578; *Davis-Lewallen v. Clegg*, 2010 Ark. App. 627, 378 S.W.3d 185; *see also Canerday-Banks*, 2018 Ark. App. 523,

9

at 10 n.7 ("[O]ur supreme court has made clear that a biological grandparent's status as a 'relative' terminates when his or her child's parental rights are terminated."). Further, we have held that while keeping siblings together is a commendable goal and an important consideration as a general rule, it is but one factor that must considered when determining the best interest of the child. *Ark. Dep't of Hum. Servs. v. Couch*, 38 Ark. App. 165, 832 S.W.2d 265 (1992) (considering sibling separation in an adoption proceeding).

In this case, we hold that the circuit court's decision denying Luz and Cesar's adoption petition was not clearly erroneous. Because the adoption proceeding occurred following the termination of Adela's right, Luz and Cesar were not entitled to the relative preference. Even so, the circuit court considered the relative preference but concluded that it was not in A.H.'s and E.H.'s best interest to grant the petition. The evidence showed that the twins had lived in the Willardsons' home for half of their four-year life. They had suffered severe trauma in their mother's home, and the Willardsons had become their parents and were helping them heal from that trauma. The twins' therapist recommended that the Willardsons continue to care for them, and she stated that their removal from the Willardsons' home would cause significant regression. The Willardsons also testified that their removal would be a disaster and catastrophic.

Further, even though the denial of the petition results in the twins' separation from two of their siblings, the court ordered that the sibling visits continue, and the Willardsons stated that they would facilitate the twins' sibling relationships. Accordingly, giving the circuit court greater deference as we are required to do in proceedings involving the welfare

of young children, we find no error. We therefore affirm the circuit's court denial of the adoption petition.

Affirmed.

VIRDEN and HIXSON, JJ., agree.

Ark. Dep't of Human Services, Office of Chief Counsel, by: *Andrew Firth*; and *Matthews, Campbell, Rhoads, McClure & Thompson, P.A.*, by: *Sarah L. Waddoups*, for appellants.

*Casey D. Copeland*, for separate appellees Megan Willardson and James Aaron Willardson.

*Dana McClain*, attorney ad litem for minor children.