Gerald Wayne LYONS  *v.*  Teresa Lyons McINVALE

CA 06-1146                                          256 S.W.3d 512

Court of Appeals of Arkansas
Opinion delivered May 2, 2007

*Shackleford, Phillips, Wineland & Ratcliff, P.A.*, by: *Brian H. Ratcliff*, for appellant.

*Mary Thomason*, for appellee.

Davɪᴅ M. Gʟᴏᴠᴇʀ, Judge. The parties in this case were divorced on December 5, 1994. Appellant, Gerald Lyons, was awarded custody of the parties' older daughter, Kimberly, and appellee, Teresa [Lyons] McInvale, was awarded custody of the parties' younger daughter, Sarah. No child support was ordered to be paid by either party so long as custody of the girls was divided between the parties. The trial court also ordered that all of the marital property be divided equally. If the parties were unable to arrive at an agreement, the trial court reserved jurisdiction to determine what was marital property and to order a sale or any other appropriate division of the marital property. The trial court further ordered that the parties should attempt to work out their marital debts but if they could not do so, it would determine each party's responsibility with regard to the marital debt.

### Intermediate Orders

On January 27, 1995, a hearing was held on various outstanding issues, including the issues of division of marital property and marital debt, and the trial court specifically ordered that each party was responsible for one-half of the Discover and VISA balances. The trial court further ordered that the balance on the MBNA Gold card was to be divided equally except that Gerald was to be responsible for the charges for a satellite decoder ($1,246.62), the Adams Mail charges ($94.98), and the pay-off to Western Auto for a washer and dryer ($792.22) that Gerald had in his possession.

In September 1996, an order was entered changing custody of Kimberly from Gerald to Teresa and ordering Gerald to pay

$122 per week in child support for both girls. This order also spelled out specific visitation for Gerald.

In a letter opinion dated February 11, 1997, the trial court recited that in an order entered January 9, 1997, it found that Gerald's child-support obligation was to be reduced to $61 per week if Kimberly continued to refuse to visit Gerald, and that the February 11 hearing was held to consider Teresa's motion to reconsider that order. The trial court denied the motion to reconsider, stating that Gerald contended that it was Kimberly's fault that she did not visit him, and Teresa and Kimberly contended that it was Gerald's fault that visitation did not occur. The trial court found, however, that the fault was attributable to both parties. The trial court held that so long as the present attitudes prevailed, visitation seemed to be an impossibility, and that child support would remain at $61 per week so long as there was no visitation. An order reflecting the trial court's findings was filed of record on February 27, 1997.

In a May 29, 1998 second letter opinion, the trial court granted Gerald judgment in the amount of $978.56 against Teresa for credit-card charges she had failed to pay. The trial court also found that if Sarah refused to visit Gerald, his child-support obligation would cease; however, the trial court also increased Gerald's child-support obligation for Sarah from $61 to $92 per week. An order to this effect was filed of record on June 16, 1998.

### Petition to Show Cause/Counterclaim

On May 21, 2004, Gerald filed a petition to show cause, asserting that Teresa had failed to pay her portion of the MBNA Gold card; that he had paid off the entire balance on April 28, 2004; and that Teresa should be required to appear and show cause why she had failed to comply with the trial court's order. Gerald sought judgment against Teresa for one-half the amount he had paid less the charges for the satellite decoder, Adams Mail charges, and the washer and dryer. Teresa answered Gerald's petition and counterclaimed for judgment on unpaid child support. Gerald responded to the counterclaim, stating that he was not required to pay child support so long as he had no visitation with his children; that Teresa had failed to provide him with visitation; and that he therefore was not in arrears on child support.

### Testimony

At the hearing, Gerald testified that the December 21, 1994 MBNA statement indicated that there was a $4,980.32 balance on

the credit card. He said that after he deducted the charges for which the trial court held him solely responsible, the balance on the credit card was $2,846.50, and Teresa's one-half was $1,413. Gerald said that he paid MBNA $4,000 on April 27, 2004, to satisfy the credit-card obligation, and that he had to pay interest on the credit card. Gerald argued that he was entitled to $3,501 in interest, which he calculated from November 1995 to when he paid the card off in May 2004. On cross-examination, Gerald testified that other than the $4,000 payment in April 2004, he did not have proof of any other payments he made from December 1994 to April 2004. Although he admitted that he had made additional charges on the MBNA card between 1994 and 2004, he did not have any documentation of those charges or of the amount of interest charged by MBNA. Gerald also admitted that those later charges would have been included in the $4,000 payment he made in April 2004.

Gerald testified that he had problems receiving his visitation, and that his child support had been modified to $61 per week because Kimberly would not visit him. Gerald said that he requested and received specific visitation in September 1996, but he later began having visitation problems with Sarah, and he asked the trial court to terminate his child support if she would not agree to visit him. He said that after an order was entered to this effect in 1998, he continued to have visitation problems with Sarah. He said that he did not get to exercise any extended period of visitation and that he only saw Sarah on a few occasions before she graduated from high school.

On cross-examination, Gerald said that at the time the order was entered in 1998, Sarah was thirteen, and he denied allegations that he had never made contact with her for visitation. Gerald said that he "called and called" to exercise visitation, but that he was told that Sarah would not be coming because she had something else to do. Gerald said that he did not have contact with Sarah on a regular basis from the time she was sixteen until she turned eighteen. He agreed that he had paid no child support during that time, and he said that he believed that he was following the trial court's order because he did not have any visitation. He also admitted that he did not notify Teresa in writing of the summer visitation dates he desired, and he did not attempt to pick Sarah up for Christmas vacation or Father's Day visitation.

Sarah Lyons, who was twenty-one at the time of this hearing, testified that following the hearing in 1998, at which time

she was thirteen, she was not told that Gerald's child-support payments were contingent upon her visiting her father. She said that she was not visiting him at that time because she did not understand why he did not want to see Kimberly as well. She said that if her father had tried to exercise visitation that she would have agreed to resume it without her sister after the hearing, but that he did not call her after the 1998 hearing until she turned sixteen in 2001. Sarah said that in 2001, her father called her and Kimberly and said that he wanted to see both of them, and that they went to see him. Sarah said that she began to see her father again after that meeting, although she did not go every other weekend because she was working and was involved in band and theater and also had homework. She said that she spent the night at her father's house "a couple of times" but not very often, and she did go with him to see his new in-laws. Sarah said that she also did not see her mother much on weekends and after school because of her activities.

On cross-examination, Sarah admitted that she did not go see her father every other weekend and that she never had extended summer visitation. However, Sarah said that Gerald did not call her about visiting every other weekend or extended summer visitation.

Teresa McInvale testified that between 1998 and 2004, Gerald never provided her with any credit-card statements or said anything to her about owing any money on the MBNA card. Teresa said that she did not make any charges on that card after 1994, and she did not know if Gerald did so or not. She said that Sarah did visit with Gerald after 1998. The first time she recalled Gerald contacting Sarah for visitation was shortly after Sarah turned sixteen. Teresa said that she had received no child support since 1998, but that she did not pursue it because she wanted the girls to have a relationship with their father. Teresa admitted that Gerald did not have every other week or extended summer visitation from June 1998 until Sarah graduated from high school, but she said that Gerald stopped contacting Sarah. She said Gerald did not even ask for every other weekend visitation until Sarah was sixteen. Teresa said that her feeling was that Gerald did not want to pay child support so he did not want to talk to his children for three years, although he did call Sarah after she turned sixteen. She also said that Gerald did not contact Sarah, send a birthday card, or send Christmas presents.

## Ruling

The trial court issued another letter opinion on June 14, 2006, after the hearing on these matters, in which it found that Gerald had paid the MBNA Gold card and was entitled to repayment from Teresa of $1,413, the portion of the charges that she was originally ordered to pay. However, the trial court denied Gerald's claim for reimbursement from Teresa of $3,501 in interest paid on the credit card, finding that Gerald admitted that he had made other charges on the account in amounts unknown to him and that he had failed to establish that he had in fact paid any interest charges for which he sought reimbursement. Furthermore, the trial court found that the June 16, 1998 order provided that child support was to be paid for Sarah in the amount of $92 per week; that the order also stated that the child-support obligation was to cease if Sarah refused to visit with Gerald; that although Gerald contended that he had little contact and no substantial visitation with Sarah from the time of the 1998 order until she turned sixteen, he had taken no action to terminate child support on that basis; that Teresa and Sarah, who was now an adult, testified that Gerald did not request visitation, telephone Sarah, or encourage visitation from the time Sarah was thirteen to age sixteen; that Gerald had failed to prove that Sarah refused to visit him from 1998 until the time she reached majority; and that Gerald was responsible for payment of child support in the amount of $9,568, less the $428 of support he had paid since the May 1998 hearing, leaving a total of $9,140 in child-support arrearages.

## Present Appeal

Gerald now appeals this order, arguing that the trial court erred (1) in refusing to award him interest accrued on the MBNA Gold card and (2) in finding that he failed to meet his burden of proof that Sarah refused to visit him from 1998 until she reached majority and ordering him to pay $9,140 in back child support. We affirm.

This court reviews domestic-relations cases de novo on the record, and we do not reverse a finding of fact by the trial court unless it is clearly erroneous. *Simmons v. Simmons*, 98 Ark. App. 12, 249 S.W.3d 843 (2007). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed. *Id.*

■ Gerald argues that the trial court erred in not awarding him $3,501 in interest on the MBNA credit card. He contends that he was burdened with this interest at a rate of 15.9% until he finally paid off the balance on April 27, 2004; that he had to pay Teresa's portion of the balance because she chose to ignore the order and forced him to carry her one-half of the debt, including interest; and that she should not be rewarded for that conduct. However, Gerald failed to present any proof that he had made any payments between December 1994 and April 2004 other than the one made on April 27, 2004, and he presented no proof of the interest charged by MBNA during that time. Furthermore, Gerald admitted that he had charged additional items on the credit card after 1994, which were included in the April 2004 payoff, although he did not have any documentation of the amounts that he charged. In short, Gerald failed to meet his burden of proof of showing what Teresa owed in interest charges, if anything. The trial court would have had to resort to speculation and conjecture to determine what charges were attributable to Teresa, given the evidence before it. We cannot say that the trial court's decision was clearly erroneous.

Gerald also argues that the trial court erred in finding that he owed child-support arrearages in the amount of $9,140. Although it is clear that Gerald did not receive his visitation on a regular basis, he did not return to court to attempt to terminate his child-support obligation, which was set at $92 per week in the 1998 order, which remained in force. Once a child-support obligation is due, it becomes vested and a debt due the payee. *Office of Child Support Enforcement v. King*, 81 Ark. App. 190, 100 S.W.3d 95 (2003).

■ Furthermore, both Teresa and Sarah testified that Gerald made no effort to contact Sarah for her visitation, a fact that Gerald partly admits, although he testified that he attempted to exercise his visitation shortly after the 1998 order to no avail. Sarah testified that if her father had contacted her after the 1998 order, she would have visited with him. The testimony on this point is conflicting, and the trial court appeared to believe that Gerald did not make any effort to exercise his visitation. The trial court is in the best position to determine credibility in these situations, and this court defers to the trial court with regard to credibility determinations. *See Hurtt v. Hurtt*, 93 Ark. App. 37, 216 S.W.3d 604 (2005). Gerald argues that the trial court erred in finding that he failed to meet his burden of proof that Sarah continued to refuse

to visit with him after the 1998 order until the time of her majority. If Teresa and Sarah are to be believed that Gerald made no effort to exercise his visitation on a regular basis, he is in no position to now argue that he is not obligated to pay child support because he did not receive visitation. Furthermore, Sarah testified that she did not refuse to visit with her father. We cannot say that the trial court's decision that Gerald owed $9,140 in child-support arrearages was clearly erroneous.

We are troubled by the fact that the trial judge tied Gerald's child-support obligation to whether he received visitation. There is a line of cases, in reference to adoption, holding that the duty to pay child support is independent of the duty of the custodial parent to allow visitation, because both may be enforced by the courts. *Henson v. Money*, 273 Ark. 203, 617 S.W.2d 367 (1981); *Bemis v. Hare*, 19 Ark. App. 198, 718 S.W.2d 481 (1986); *Brown v. Johnson*, 10 Ark. App. 110, 661 S.W.2d 443 (1983). This reasoning should not be limited solely to adoption cases, and it is squarely on point in this case. If Gerald was not receiving his visitation, the answer was not to cut off child support, but to return to court.

Affirmed.

ROBBINS and HEFFLEY, JJ., agree.