SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-15-878

| | |
|---|---|
| | **Opinion Delivered** November 30, 2016 |
| BRITTANY WALDEN | |
| APPELLANT | APPEAL FROM THE MONTGOMERY COUNTY CIRCUIT COURT [NO. 49-DR-15-4] |
| V. | |
| | HONORABLE JERRY RYAN, JUDGE |
| JACOB EDWARD JACKSON | |
| APPELLEE | REVERSED AND REMANDED |

## LARRY D. VAUGHT, Judge

Brittany Walden appeals the Montgomery County Circuit Court's July 8, 2015 order finding that Jacob Jackson is the father of her son H.R.W., changing the child's last name to Jackson, establishing visitation for Jackson, ordering Jackson to pay future child support, and declining Walden's request for retroactive child support. Walden argues that the current appeal was rendered moot by the circuit court's subsequent modification of the order from which this appeal was taken. Because we held that the circuit court lacked jurisdiction to modify the order and therefore reversed and dismissed Walden's companion appeal, *Walden v. Jackson*, 2016 Ark. App. 578, we hold that the current appeal is not moot. We therefore address the merits of Walden's appeal of the circuit court's July 8, 2015 order.[1]

---

[1]Walden's brief asserted that this appeal is moot but alternatively presented points for reversal.

Brittany Walden gave birth to H.R.W. on November 11, 2014. The following January, Jacob Jackson filed suit to establish paternity, change the child's birth certificate to reflect that he is the father, and to change the child's last name from Walden to Jackson. Walden requested that, if Jackson was found to be the father, he be ordered to pay retroactive and future child support. Jackson was then conclusively determined to be H.R.W.'s father through DNA testing.

At a hearing on the matter, Jackson agreed to pay child support. Jackson testified that he had wanted to see H.R.W. since birth, but that, although Walden had repeatedly offered to let him come over and visit the child, he never did. The court ruled from the bench that the child's last name would be changed because Jackson was proved to be the father, the child was still very young, Jackson was planning to be involved in the child's life, and "that's only right." The court awarded Walden sole custody and ordered Jackson to pay future child support but denied Walden's request for retroactive child support because Jackson had not had any contact with the child. The court issued a written order on July 8, 2015. It stated that the child's name should be changed. It also stated that the court declined to award retroactive child support because "Jackson was not able to have visitation with the child pending this hearing." Walden filed a timely notice of appeal.

Walden argues that the circuit court's July 8 order was clearly erroneous in two regards: (1) it failed to determine, after consideration of the factors required pursuant to *Huffman v. Fisher*, 337 Ark. 58, 987 S.W.2d 269 (1999) (*Huffman I*), that it was in H.R.W.'s best interest to change his name, and (2) it failed to award retroactive child support. We have previously held that "[w]here a full inquiry is made by the circuit court of the factors set out [in *Huffman I*] and

SLIP OPINION

a determination is made with due regard to the best interest of the child, the circuit court's decision will be upheld so long as it is not clearly erroneous." *Poindexter v. Poindexter*, 360 Ark. 538, 541, 203 S.W.3d 84, 87 (2005) (citing *Huffman I*, 337 Ark. at 69, 987 S.W.2d at 274). However, where the circuit court has failed to consider whether the name change is in the child's best interest pursuant to the *Huffman I* factors, we must reverse. *See id.*

Our standard of review for an appeal from a child-support order is de novo on the record, and we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *Ward v. Doss*, 361 Ark. 153, 158, 205 S.W.3d 767, 770 (2005) (citing *McWhorter v. McWhorter*, 346 Ark. 475, 58 S.W.3d 840 (2001)). In reviewing a circuit court's findings, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Id.* at 158, 205 S.W.3d at 770. As a rule, when the amount of child support is at issue, we will not reverse the chancellor absent an abuse of discretion. *Id.*, 205 S.W.3d at 770. However, a circuit court's conclusion of law is given no deference on appeal. *Id.*, 205 S.W.3d at 770.

In *Huffman I*, the Arkansas Supreme Court held that the party who petitions for the change of a child's name has the burden to demonstrate that such change is in the child's best interest, and the court must consider the following factors in determining best interest:

(1) The child's preference;
(2) The effect of the change of the child's surname on the preservation and development of the child's relationship with each parent;
(3) The length of time the child has borne a given name;
(4) The degree of community respect associated with the present and proposed surnames;
(5) The difficulties, harassment, or embarrassment that the child may experience from bearing the proposed surname; and
(6) The existence of any parental misconduct or neglect.

3

*Huffman I*, 337 Ark. at 68, 987 S.W.2d at 274. The Arkansas Supreme Court later explained that the circuit court may weigh only those factors for which the parties provide evidence and which are relevant to the circumstances. *Huffman v. Fisher*, 343 Ark. 737, 38 S.W.3d 327 (2001) (*Huffman II*). The court stated that a name change cannot be based on a noncustodial parent's desire to "connect" with the child. *Id.*

In this case, the court's July 8, 2015 order simply states that H.R.W.'s last name shall be changed. It neither provides any analysis as to any of the *Huffman* factors nor states that the name change is in the child's best interest. Pursuant to *Poindexter* and *Huffman I*, we must reverse and remand in order for the circuit court to conduct the required best-interest analysis.

Walden also argues that the circuit court erred in declining to award retroactive child support because it found that Jackson had not been able to have visitation with the child since birth. Arkansas law is clear that child support is an obligation owed to the child independent of the noncustodial parent's relationship or visitation with the child. *Newton v. State, Office of Child Support Enf't*, 2013 Ark. App. 53, 5 (citing *Lyons v. McInvale,* 98 Ark. App. 433, 439, 256 S.W.3d 512, 516 (2007); *Henson v. Money*, 273 Ark. 203, 617 S.W.2d 367 (1981)). Our courts have repeatedly upheld a circuit court's order awarding retroactive child support from the date of the child's birth to the date of judgment. *See Barnes v. Barnes*, 311 Ark. 287, 843 S.W.2d 835 (1992). Moreover, Arkansas Code Annotated section 9-10-111(a) (Repl. 2015) states that "[i]f it is found by the circuit court that the accused is the father of the child and, if claimed by the mother, the circuit court or circuit judge *shall* give judgment for a monthly sum of not less than ten dollars ($10.00) per month for every month from the birth of the child until the child attains eighteen (18) years of age." (Emphasis added.) The plain language of the statute requires

that an award of child support under the statute must flow from the date of the child's birth. Therefore, we hold that the circuit court's determination that Jackson is not be required to pay retroactive child support based on his lack of contact with the child was in violation of section 9-10-111(a). The statute provides no exceptions, and our caselaw is clear that a parent's child-support obligation does not depend on his relationship or visitation with the child.[2] *Newton,* 2013 Ark. App. 53, at 5. Accordingly, we reverse the circuit court's order declining to award retroactive child support.

Reversed and remanded.

ABRAMSON and BROWN, JJ., agree.

*Robin Smith Law Firm, P.A.*, by: *Robin C. Smith*; and *Walas Law Firm, PLLC*, by: *Breean Walas*, for appellant.

No response.

---

[2] Moreover, the court's decision on this point was clearly erroneous because the parties agreed that Walden had repeatedly offered Jackson opportunities to see the child, which he chose not to do.