

# ARKANSAS COURT OF APPEALS

DIVISION III

**No.** CV-17-257

**Opinion Delivered** November 15, 2017

JENNIFER ANNE HENDERSON

APPELLANT

V.

SHANE MATTHEW JOHNSTON

APPELLEE

APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FOURTEENTH DIVISION [NO. 60DR-10-5147]

HONORABLE VANN SMITH, JUDGE

REVERSED AND REMANDED

## DAVID M. GLOVER, Judge

Jennifer Henderson and Shane Johnston are the parents of D.J., who was born in 2004. Jennifer appeals from the trial court's December 15, 2016 order, contending 1) the trial court clearly erred in limiting retroactive child support to November 3, 2010, when Shane filed his petition for paternity rather than extending it back to 2008, when Shane stopped providing support for D.J., and 2) the trial court clearly erred in abating Shane's entire child support obligation for the two-year period when Jennifer took D.J. to Great Britain. We agree and reverse and remand for further proceedings consistent with this opinion so the trial court can recalculate the total amount of child support owed to add the appropriate amounts for 1) the period between 2008 (when Shane stopped providing support) and November 3, 2010, and 2) the period September 2012 through the end of 2014, which should not have been abated.

D.J. was born in 2004. Although never married, Jennifer and Shane lived together on and off until 2006 or 2007. It is undisputed that from D.J.'s birth in 2004 until the parties permanently separated, support for D.J. was shared by the parties and that thereafter Shane continued to provide support for D.J. until sometime in 2008. Jennifer makes no claims for child-support arrearages for that period of time.

On November 3, 2010, Shane petitioned the trial court to establish that he is D.J.'s father. On December 22, 2011, the parties entered an agreed order, which, among other things, established Shane's paternity; awarded primary custody of D.J. to Jennifer; set out visitation, including transportation and exchange points for Jennifer's anticipated move out of state; provided for telephone communications; set Shane's prospective child-support obligation at $90/week (based on his unemployment income) and ordered him to notify Jennifer once he became employed so his child-support obligation could be recalculated; and reserved the issues of recalculating Shane's child-support obligation once he secured employment and determining his child-support arrearages because he had not provided the necessary financial information to do so at the time of the agreed order.

When the December 22, 2011 agreed order was entered, Jennifer had married someone else. Her husband was in the military and subject to relocation, so the order identified out-of-state visitation. As it turned out, Jennifer's husband was reassigned out of country and relocated to Great Britain, where they lived from September 2012 through the end of 2014. Shane alleged in his contempt motion that Jennifer relocated to Great Britain without telling him and without giving him any contact information. In the spring of 2015, Jennifer and D.J. returned to the United States. It is undisputed that since that time Shane

SLIP OPINION

has received his visitation with D.J. As part of the instant proceedings he asked for an abatement of his child-support obligation for the period Jennifer had D.J. in Great Britain.

On May 16, 2014 (amended November 14, 2014), Shane filed a motion for contempt against Jennifer. On June 2, 2014, Jennifer filed a counter-motion for contempt against Shane. In her counter-motion, Jennifer also asked the trial court to calculate Shane's retroactive child support and arrearages and to recalculate his child-support obligation in light of him getting a job, which had been contemplated by the December 22, 2011 agreed order. The matter was heard on November 10, 2016. His contempt motion was withdrawn, and her contempt motion was denied. Thus, they are not at issue.

The trial court entered its order from the November 10 hearing on December 15, 2016. The court awarded Jennifer retroactive child support to November 3, 2010, which was the date Shane petitioned the court to establish his paternity; recalculated Shane's child-support obligation to $303 biweekly, to begin November 1, 2016 (based on his current net monthly income of $2,067, which the court stated was not a deviation from the family-support chart); abated Shane's entire child-support obligation for the period of September 2012 through the end of 2014 (based on Jennifer's move to Great Britain without notice to Shane and her failure to allow contact with Shane during that period); and concluded that Shane's total child-support obligation was $12,580, after giving him credit for the amounts he had paid.

During the November 10, 2016 hearing, Shane provided his W-2 forms and testified about his income and the support he had provided for D.J. He acknowledged that as of October 28, 2016, he was behind at least $10,065. He testified about the events during the

time D.J. was in Great Britain and how he was deprived of contact with D.J., but that from the time D.J. returned from Great Britain until the present, he had no complaints about visitation.

For her first point of appeal, Jennifer contends that the trial court clearly erred in failing to award her child-support arrearages for the period between 2008, when Shane stopped providing voluntary support for D.J., to November 3, 2010, when Shane filed his petition to establish paternity. We agree.

As part of its calculation of retroactive child support and arrearages, the trial court started the applicable time period with Shane's November 3, 2010 petition to establish paternity. D.J. was born in 2004, but Jennifer did not seek child support before 2008 (when Shane stopped providing voluntary support for the child). We find error in the November 3, 2010 starting point chosen by the trial court. Our Supreme court explained in *Akins v. Mofield*, 355 Ark. 215, 132 S.W.3d 760 (2003), that a parent has a legal duty to support his or her minor children, regardless of the existence of a support order or the other parent's request for support, and child support is an obligation owed to the child, not the parent. Administrative Order No.10 and its predecessor child-support guidelines set out the presumptively correct amount of child support for retroactive child support for those years in which the guidelines were in place, beginning February 5, 1990. *Id.* Our court has repeatedly upheld a trial court's order awarding retroactive child support from the date of the child's birth to the date of judgment. *Walden v. Jackson*, 2016 Ark. App. 573, 506 S.W.3d 904; *see also* Ark. Code Ann. § 9-10-111(a) (Repl. 2015), (*cited in Walden.*)

Here, Jennifer did not seek child support before the time in 2008 when Shane stopped voluntarily providing support for D.J. That was because they had shared the child's expenses while living together, and after they separated, Shane had continued to contribute to D.J.'s support until sometime in 2008. In addition, Shane never disputed his paternity, even though he did not seek to have it established until the November 3, 2010 petition. Accordingly, the trial court erred by not also including the applicable period prior to November 3, 2010, in calculating retroactive child support.

For her remaining point of appeal, Jennifer contends the trial court also erred in abating Shane's child-support obligation for the period she was living with D.J. in Great Britain (September 2012 through the end of 2014) instead of including that period of time in the recalculation of his child-support obligation since he became employed with the railroad on October 29, 2012. We agree.

The December 22, 2011 agreed order was entered at a time Shane was unemployed. He was instructed to inform Jennifer when he secured employment so that his child-support obligation could be recalculated using his employment income amount rather than his unemployment income amount. Shane got a job on October 29, 2012, but did not inform Jennifer. He testified about his income for the years 2013, 2014, 2015, and for 2016 through October 15, 2016. He acknowledged the need to recalculate his support obligation in light of his employment but asked the trial court to abate his support obligation for the time D.J. was in Great Britain. The trial court granted that request. It was error to do so.

Our court has long held that child-support obligations and visitation are completely separate issues. *See, e.g.*, *Walden*, *supra*; *Newton v. Office of Child Support Enf't*, 2013 Ark.

SLIP OPINION

App. 53; *Lyons v. McInvale*, 98 Ark. App. 433, 256 S.W.3d 512 (2007). As explained in these cases, when the custodial spouse interferes with visitation, the remedy is to seek court enforcement of visitation—not to withhold child support. Child support is an obligation owed to the child independent of the noncustodial parent's relationship or visitation with the child. *Walden, supra.* A parent's child-support obligation does not depend on the parent's relationship or visitation with the child. *Id.*

We find error in the trial court's conclusion that child support was to be calculated from the November 3, 2010 filing date of Shane's petition to establish paternity, and we also find error in the abatement of Shane's child-support obligation for the period D.J. was in Great Britain (September 2012 through the end of 2014). Thus, we reverse and remand this matter to the trial court for further proceedings consistent with this opinion.

Reversed and remanded.

GLADWIN and HIXSON, JJ., agree.

*Lightle, Raney, Streit & Streit, LLP*, by: *Jonathan R. Streit*, for appellant.

*Satterfield Law Firm*, by: *Guy "Randy" Satterfield*, for appellee.